# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE
## SENATE AND THE HOUSE OF REPRESENTATIVES.

The General Court constitutionally may enact legislation, requiring as a condition precedent to the right of an owner to register a motor vehicle or trailer for operation on the ways of the Commonwealth, that the owner of such motor vehicle or trailer shall provide security for (a) the discharge of his liability for personal injuries or death at any time resulting from the ownership, operation, maintenance or use of such motor vehicle or trailer upon the ways of the Commonwealth, and for (b) the discharge of the liability of any person responsible for the operation of such motor vehicle or trailer with the express or implied consent of the owner for such personal injuries or death.

The selection, by legislation of the character above described, of owners of motor vehicles as the only persons required to provide security for injuries caused by such property would not violate constitutional provisions.

The General Court constitutionally may enact legislation prescribing that security of the character above described shall conform to requirements carefully defined in the act.

Proposed legislation of the character above described would not be rendered unconstitutional

(1) By reason of the fact that it does not apply to nonresident operators operating in this Commonwealth motor vehicles or trailers which have not been registered under G. L. c. 90;

(2) Nor by reason of the fact that it does not apply to motor vehicles or trailers owned by the Commonwealth or by a corporation subject to the supervision and control of the department of public utilities or by a street railway company under public control;

(3) Nor by reason of the fact that it requires that the operators of certain motor vehicles as common carriers subject to G. L. c. 159, § 45, shall furnish a liability policy or bond as above described in addition to the bond for property damage required by certain amendments to G. L. c. 159, § 46, set out in the bill;

(4) Nor by reason of the fact that it expressly excludes from its protection employees covered by the workmen's compensation law;

(5) Nor by reason of the fact that it provides for security for claims for personal injuries or death resulting from the ownership, operation, maintenance or use of motor vehicles or trailers on the ways of the Commonwealth and not upon private property;

(6) Nor by reason of the fact that it requires that such security shall be provided only in respect to claims for personal injuries or death and not in respect to claims for damage to property;

(7) Nor by reason of the fact that it provides that the maximum security in the case of the cash deposit above referred to shall be $5,000, while the security in the case of the policy of insurance or bond shall be $5,000 for death or personal injuries of any person and $10,000 for personal injuries or death of more than one person in the same accident;

(8) Nor by reason of the fact that it is made applicable equally, excepting for motor vehicles owned by the Commonwealth or by a corporation subject to the supervision and control of the department of public utilities or by a street railway company under public control, to all classes and kinds of motor vehicles and trailers whether operated for pleasure or private business, including the business of operating taxicabs, or by common carriers of passengers;

(9) Nor by reason of the fact that it does not expressly exclude from its operation motor vehicles or trailers engaged wholly or in part in interstate commerce.

The General Court constitutionally may enact legislation regulating the form of motor vehicle liability policies or bonds above described and requiring that any such policy or bond shall contain the following provisions:

(1) That the policy or bond shall not be cancelled by the insured or principal during its term except upon the transfer, loss, theft or destruction of the motor vehicle or trailer covered thereby or upon the substitution of a deposit of cash or securities for such policy or bond;

(2) That no statement made by the insured or in his behalf and no violation of the terms of the policy shall operate to defeat the claim of any judgment creditor of the insured proceeding under the provisions of G. L. c. 175, § 113, and G. L. c. 214, § 3, cl. 10, so as to bar a recovery within the limits of indemnity provided in the policy;

(3) That the policy or bond shall cover, subject to the limitations above described, all claims, irrespective of number, for such personal injuries or death occurring during its term.

The General Court constitutionally may enact legislation providing that policies or bonds of the character above described shall not contain any exclusions or exceptions as to specified accidents or injuries or causes thereof.

The General Court constitutionally may enact legislation relating to the approval by the commissioner of insurance of premiums to be charged by insurance or surety companies issuing policies of liability insurance or bonds as above described, of classifications of risks, and of modification or altering or revising of such classifications of risks or premiums, but such legislation must provide for a judicial review of the premiums thus to be established; subject to such condition, such legislation constitutionally may provide that

(1) Such premiums shall be approved in writing by the commissioner of insurance as adequate, just, reasonable and non-discriminatory for the risks to which they respectively apply and that no insurance or surety company shall issue such policy or bond until such approval is obtained;

(2) The commissioner of insurance in determining the adequacy, justness and reasonableness of the said premiums and whether or not discrimination is being practised relative thereto shall not allow a loading for commissions to be paid to insurance agents or brokers negotiating or issuing said policies or bonds in excess of fifteen per cent of such premiums;

(3) The premium rates and classifications of risks approved by the commissioner of insurance shall be used by all the insurance companies issuing such policies or acting as surety on such bonds;

(4) The commissioner of insurance may from time to time modify, alter or revise any such classification of risks or premiums;

(5) The decision of the commissioner of insurance, in the matters above described, shall be final, except for the requirement as to a judicial review above described. .

If no provision were made in the proposed legislation for a judicial review of the decisions of the commissioner of insurance in approving, disapproving, modifying, altering or revising premium rates as above described, the act would be unconstitutional.

The General Court constitutionally may enact legislation having, besides the provisions above described, provisions establishing a board of appeal to hear and determine complaints of persons aggrieved by the cancellation of a policy or bond by a company or a refusal on its part to issue a liability policy or to act as a surety on a bond, under the provisions of the act, and in such legislation constitutionally may provide that

(1) The decision of such board on the question, whether the cancellation or refusal was proper or reasonable and whether the complainant was a proper person to whom to issue a policy or bond shall be "final and binding upon the parties," since such provision would mean and must be construed to mean that findings of fact by the board would be final and not that there would not be some means of correcting crucial errors of law;

(2) If an insurance or surety company fails to comply with the decision of such board in favor of the complainant, the complainant may present a certified copy of the decision of the board to the Superior Court, which shall enter a decree.in accordance therewith and notify the parties; as such provision would be interpreted to mean, in order to save its constitutionality, that such decree should be entered after such a judicial examination and inquiry as would be required by the law in the light of that finding;

(3) Such decree of the Superior Court "shall be final"; as the decree, notwithstanding such provision, would be subject to the limited review available by writ of certiorari or, in appropriate instances, by a bill of review;

(4) If a foreign insurance company fails to abide by such decree of the Superior Court or a justice thereof, the commissioner of insurance shall suspend its license to transact business in the Commonwealth until it complies with such decree;

(5) If a domestic insurance company fails to abide by such decree the commissioner shall proceed to have it enjoined from the further transaction of its business until it complies with said decree.

Provisions of the character above described relating to a board of appeal would be unconstitutional if there were no provision for an appeal from a decision of said board of appeal adverse to the insurance or surety company or to the complainant.

Having discussed a long list of particular questions presented to them in an order adopted by the Senate and House of Representatives in concurrence relating to an accompanying bill entitled "An Act requiring owners of certain motor vehicles and trailers to furnish security for their civil liability on account of personal injuries sustained by their motor vehicles and trailers," which covered more than eighteen printed pages, the Justices of this court in giving their opinions under c. 3, art. 2 of the Constitution, asked to be excused from making further answer to a question, ".Would the aforesaid bill, if enacted into law, be unconstitutional on any ground not mentioned in any of the preceding questions?"

THE following order was passed by the House of Representatives on March 12, 1925, and by the Senate in concurrence on March 16, 1925, and was transmitted to the Justices of the Supreme Judicial Court on March 20, 1925.

WHEREAS, There is pending before the general court a bill designed to secure financial redress in cases of personal injuries or death accidentally sustained and arising out of the ownership, operation, maintenance or use upon the ways of the commonwealth of certain motor vehicles or trailers, such bill being printed in Appendix E in current Senate document 285, and being entitled "An Act requiring owners of certain motor vehicles and trailers to furnish security for their civil liability on account of personal injuries sustained by their motor vehicles and trailers," a copy of which is herewith submitted; and

WHEREAS, Doubt exists as to the constitutionality of certain provisions of said bill, if enacted into law; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the general court on the following important questions of law: —

1. May the General Court constitutionally enact legislation requiring as a condition precedent to the right of the owner to register a motor vehicle or trailer for operation on the ways of the commonwealth that the owner of such motor vehicle or trailer shall provide security for,—

(a) The discharge of his liability for personal injuries or death at any time resulting from the ownership, operation,

maintenance or use of such motor vehicle or trailer upon the ways of the commonwealth?

(b) The discharge of the liability of any person responsible for the operation of such motor vehicle or trailer with the express or implied consent of the owner for such personal injuries or death?

2. Would the fact that the said bill does not provide such security for the discharge of such liability of persons other than those mentioned in questions 1(a) and 1(b) render it open to constitutional objection?

3. May the General Court constitutionally enact legislation prescribing that such security shall consist of a policy of liability insurance or a bond with a surety company as surety, as provided in section thirty-four A of chapter ninety of the General Laws, or a deposit of cash or securities as provided in section thirty-four E of said chapter ninety, inserted by section two of said bill?

4. Would the aforesaid bill, if enacted into law, be unconstitutional because,—

(a) It does not apply to non-resident operators of motor vehicles or trailers operating in this commonwealth motor vehicles or trailers which have not been registered under said chapter ninety?

(b) It does not apply to certain motor vehicles or trailers set forth in section one A of said chapter ninety, inserted by section one of said bill?

(c) It requires that the operators of certain motor vehicles as common carriers subject to section forty-five of chapter one hundred and fifty-nine of the General Laws shall furnish a liability policy or bond as defined in said section thirty-four A in addition to the bond for property damage required by section forty-six of said chapter one hundred and fifty-nine, as amended by section seven of said bill?

(d) It expressly excludes from its protection employees covered by the workmen's compensation law contained in chapter one hundred and fifty-two of the General Laws?

(e) It provides for security for claims for personal injuries or death resulting from the ownership, operation, maintenance or use of motor vehicles or trailers on the ways of the commonwealth and not upon private property?

(f) It requires that such security shall be provided only in respect to claims for personal injuries or death and not in respect to claims for damage to property?

(g) It provides that the maximum security in the case of a deposit under said section thirty-four E shall be five thousand dollars, while the said security in the case of a policy of insurance or a bond shall be in the sum of $5,000 for death or personal injuries of any one person and $10,000 for personal injuries or death for more than one person in the same accident?

(h) It is made applicable equally, except as provided in section one A of said chapter ninety, to all classes and kinds of motor vehicles and trailers whether operated for pleasure or private business, including the business of operating taxicabs, or by common carriers of passengers?

(i) It does not expressly exclude from its operation motor vehicles or trailers engaged wholly or in part in interstate commerce?

5A. May the General Court constitutionally enact legislation regulating the form of motor vehicle liability policies or bonds as defined in said section thirty-four A, and requiring that any such policy or bond shall contain the following provisions: —

(a) That the policy or bond shall not be cancelled by the insured or principal during its term except upon the transfer, loss, theft or destruction of the motor vehicle or trailer covered thereby or upon the substitution of a deposit of cash or securities for such policy or bond?

(b) That no statement made by the insured or on his behalf and no violation of the terms of the policy shall operate to defeat the claim of any judgment creditor of the insured proceeding under the provisions of section one hundred and thirteen of chapter one hundred and seventy-five of the General Laws and clause ten of section three of chapter two hundred and fourteen of the General Laws, so as to bar a recovery within the limits of indemnity provided in the policy?

(c) That the policy or bond shall cover, subject to the limits of indemnity mentioned in subdivision (g) of the fourth

question, all claims, irrespective of number, for such personal injuries or death occurring during its term?

5B. May the General Court constitutionally enact legislation providing that such policies or bonds shall not contain any exclusions or exceptions as to specified accidents or injuries or causes thereof?

6. May the general court constitutionally enact legislation providing that,—

(a) The premiums to be charged by insurance or surety companies issuing policies of liability insurance or bonds as provided in said bill shall be approved in writing by the commissioner of insurance as adequate, just, reasonable and non-discriminatory for the risks to which they respectively apply and that no insurance or surety company shall issue such policy or bond until such approval is obtained?

(b) The commissioner of insurance in determining the adequacy, justness and reasonableness of the said premiums and whether or not discrimination is being practiced relative thereto shall not allow a loading for commissions to be paid to insurance agents or brokers negotiating or issuing said policies or bonds in excess of fifteen per cent of such premiums?

(c) The premium rates and classifications of risks approved by the commissioner of insurance shall be used by all the insurance companies issuing such policies or acting as surety on such bonds?

(d) The commissioner of insurance may from time to time modify, alter or revise any such classification of risks or premiums?

(e) The decision of the commissioner of insurance in approving such premiums or classifications of risks or modifying, altering or revising any such classifications of risks or premiums shall be final?

7. Would the provisions of section one hundred and thirteen B of chapter one hundred and seventy-five of the General Laws, inserted by section four of said bill, if enacted into law, be unconstitutional because no provision is made for a judicial review of the decisions of said commissioner in

approving, disapproving, modifying, altering or revising such premium rates or classification of risks?

8. May the General Court constitutionally enact legislation as set forth in section eight A of chapter twenty-six of the General Laws, inserted by section three of said bill, and in section one hundred and thirteen D of chapter one hundred and seventy-five of the General Laws, inserted by section four of said bill, establishing a board of appeal to hear and determine all complaints of any person aggrieved by the cancellation or the refusal of a company to issue a liability policy, or to act as surety on a bond, required by said section thirty-four A of chapter ninety; providing that said board shall determine whether the cancellation or refusal is proper and reasonable and whether the complainant is a proper person to whom to issue a policy or bond; providing that the decision of such board of appeal shall be final and binding upon the parties; providing that if an insurance or surety company fails to comply with the decision of said board in favor of the complainant, the latter may present a certified copy of the decision of the board to the Superior Court or a justice thereof who shall enter a decree in accordance therewith and notify the parties; providing that such decree of the Superior Court or justice thereof shall be final; and providing further that if a foreign insurance company fails to abide by such decree of the Superior Court or a justice thereof, the commissioner of insurance shall suspend its license to transact business in the commonwealth until it complies with such decree, and that if a domestic insurance company fails to abide by such decree, said commissioner shall proceed to have it enjoined from the further transaction of its business until it complies with said decree?

9. Would the provisions of said section one hundred and thirteen D, if enacted into law, be unconstitutional, because said section does not provide for an appeal from a decision of said board of appeal adverse to the insurance or surety company or to the complainant or because it does not provide for an appeal from the decree of the Superior Court, or a justice thereof, entered upon a decision of said board of appeal in favor of the complainant?

10. Would the aforesaid bill, if enacted into law, be unconstitutional on any ground not mentioned in any of the preceding questions?

The proposed statute, referred to in the above order, read as follows:

SECTION 1. Chapter ninety of the General Laws is hereby amended by inserting after section one the following new section:—

Section 1A. No motor vehicle or trailer, except one owned by the commonwealth or by a corporation subject to the supervision and control of the department of public utilities, or by a street railway company under public control, shall be registered under sections two to five, inclusive, unless the application therefor is accompanied by a certificate as defined in section thirty-four A.

SECTION 2. Said chapter ninety is hereby further amended by inserting after section thirty-four the following ten new sections:—

Section 34A. The following words, as used in sections thirty-four A to thirty-four J, inclusive, shall have the following meanings:—

"Certificate," the certificate of an insurance company authorized to transact the business specified in sub-division (b) of the sixth clause of section forty-seven of chapter one hundred and seventy-five, stating that it has issued to the applicant for registration of a motor vehicle or trailer a motor vehicle liability policy which covers such motor vehicle or trailer, conforms to the provisions of section one hundred and thirteen A of said chapter one hundred and seventy-five and runs for a period at least coterminous with that of such registration; or the certificate of a surety company authorized to transact business under section one hundred and five of said chapter one hundred and seventy-five as surety, stating that a motor vehicle liability bond, payable to the commonwealth, which covers such motor vehicle or trailer, conforms to the provisions of said section one hundred and thirteen A, and runs for a period at least coterminous with such registration, has been executed by such applicant as principal

and by such surety company as surety; or the certificate of the division stating that cash or securities have been deposited with the division as provided in section thirty-four E.

"Motor vehicle liability bond," a bond conditioned that the obligor shall within thirty days after the rendition thereof satisfy all judgments rendered against him or against any person responsible for the operation of the obligor's motor vehicle or trailer with his express or implied consent in all actions to recover damages for bodily injuries, including death at any time resulting therefrom, accidentally sustained during the term of said bond by any person other than employees of the obligor or of such other person responsible as aforesaid who are entitled to payments or benefits under the provisions of chapter one hundred and fifty-two, and arising out of the ownership, operation, maintenance or use upon the ways of the commonwealth of such motor vehicle or trailer to the amount or limit of at least five thousand dollars on account of injury to or death of any one person, and, subject to such limits as respects injury to or death of one person, of at least ten thousand dollars on account of any one accident injuring more than one person.

"Motor vehicle liability policy," a policy of liability insurance which provides indemnity for or protection to the insured and any person responsible for the operation of the insured's motor vehicle or trailer with his express or implied consent against loss by reason of the liability to pay damages to others for bodily injuries, including death at any time resulting therefrom, accidentally sustained during the term of said policy by any person other than employees of the insured or of such other person responsible as aforesaid who are entitled to payments or benefits under the provisions of chapter one hundred and fifty-two and arising out of the ownership, operation, maintenance or use upon the ways of the commonwealth of such motor vehicle or trailer to the amount or limit of at least five thousand dollars on account of injury to or death of any one person, and, subject to such limits as respects injury to or death of one person, of at least ten thousand dollars on account of any one accident injuring more than one person.

Section 34B. The registrar shall accept a certificate as defined in section thirty-four A from any person applying for registration of a motor vehicle or trailer. Said certificate of an insurance company or of a surety company shall be in a form prescribed by the commissioner of insurance, shall state the rate and classification at which the motor vehicle liability bond or policy referred to therein was issued, the amount of the premium thereon, shall contain a certification by the company issuing the policy or acting as surety on the bond, or a duly authorized agent thereof, that the premium charged thereon is at the rate approved by the commissioner of insurance and such other information as said commissioner may require.

A duplicate of said certificate shall be filed with the registrar by the company issuing the same within five days thereafter.

An insurance or surety company issuing a form of certificate other than that approved by the commissioner of insurance or failing to file a duplicate thereof with the registrar shall be punished by a fine of not less than fifty nor more than five hundred dollars.

The certificate which the division shall issue upon receipt of cash or securities under section thirty-four E shall be in such form and shall contain such information as the division may fix.

Whoever issues or alters without authority or forges any certificate as defined in section thirty-four A or duplicate thereof or issues such certificate or duplicate thereof knowing that the policy or bond therein described has not in fact been issued or executed or is not in force or that the cash or securities have not been deposited, or whoever knowing that such certificate or duplicate thereof has been issued or altered without authority or forged or that the policy or bond described therein has not in fact been issued or executed or is not in force or that the cash or securities have not been deposited and files the same with the registrar shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year or both.

Section 34C. Every manufacturer or dealer applying for

registration of motor vehicles or trailers under section five or any person applying for registration of more than one motor vehicle or trailer under section two, three or four, in lieu of taking out the single policy hereinbefore referred to or a policy covering more than one motor vehicle or trailer, may furnish a motor vehicle liability bond conforming to the provisions of section one hundred and thirteen A of said chapter one hundred and seventy-five covering all motor vehicles or trailers owned or controlled by him.

Motor vehicle liability policies may be issued covering more than one motor vehicle or trailer, in which event the amounts or limits of indemnity as provided in section thirty-four A for a motor vehicle liability policy shall be made to apply to each motor vehicle or trailer, and every manufacturer or dealer applying for registration of motor vehicles or trailers under section five may furnish a single policy in the form prescribed by said section one hundred and thirteen A covering all motor vehicles or trailers owned or controlled by such manufacturer or dealer.

Section 34D. The registrant of a motor vehicle or trailer who deposits cash or securities as provided in section thirty-four E or the person responsible for the operation of the registrant's motor vehicle or trailer with his express or implied consent shall immediately upon the service of any writ or summons in any action the payment of the judgment in which is secured by such deposit, give written notice to the registrar and the division of the bringing of such action in such form as the division may prescribe, and thereupon the division may require the giving, at the option of the registrant, of a motor vehicle liability bond or policy or may require the deposit of further cash or securities as additional security for the payment of any such judgments.

Section 34E. The applicant for registration may, in lieu of procuring a motor vehicle liability bond or policy, deposit with the division cash in the amount of five thousand dollars or bonds, stocks or other evidences of indebtedness satisfactory to the division of a market value of not less than five thousand dollars as security for the payment by such applicant or by any person responsible for the operation of such

applicant's motor vehicle or trailer with his express or implied consent of all judgments rendered against such applicant or against such person in all actions to recover damages for bodily injuries, including death at any time resulting therefrom, accidentally sustained during the term of registration by any person other than employees of the applicant or such other person responsible as aforesaid who are entitled to payments or benefits under the provisions of chapter one hundred and fifty-two, and arising out of the ownership, operation, maintenance or use upon the ways of the commonwealth of such applicant's motor vehicle or trailer to the amount or limit of at least five thousand dollars on account of bodily injury or death.

The depositor shall be entitled to the interest accruing on his deposit and to the income payable on the securities deposited and may from time to time with the consent of the division change such securities.

Upon presentation to the division by an officer qualified to serve civil process of an execution issued on any such judgment against the registrant or other person responsible as aforesaid, the division shall pay the amount of the execution, including costs and interest, up to but not in excess of five thousand dollars. If the registrant has deposited bonds, stocks or other evidences of indebtedness, the division shall, on presentation of an execution as aforesaid, cause the said securities or such part thereof as may be necessary to satisfy the judgment to be sold at public auction, giving the registrant three days' notice in writing of the time and place of said sale, and from the proceeds of said sale the division shall, after paying the expenses thereof, satisfy the execution as hereinbefore provided when a cash deposit has been made. Any payment upon an execution by the division in accordance with the provisions of this section shall discharge its members from all official and personal liability whatever to the registrant to the extent of such payment. The division shall, whenever the amount of such deposit from any cause falls below the amount required by this section, require at the option of the registrant, the deposit of additional cash or securities up to the amount required by this section or a

motor vehicle liability bond or policy as provided in this chapter.

Money or securities deposited with the division under the provisions of this section shall not be subject to attachment or execution except as provided in this section. The division shall deposit any cash received under the provisions of this section in a savings bank or the savings department of a trust company or of a national bank within the commonwealth.

Section 34F. If a judgment rendered against the principal on a motor vehicle liability bond or against the person responsible for the operation of the principal's motor vehicle or trailer with his express or implied consent is not satisfied within thirty days after its rendition, the judgment creditor may for his use and benefit and at his sole expense bring an action in the name of the commonwealth against the surety company executing the bond.

Section 34G. The division shall give to the applicant for registration a receipt on a form prescribed by it of the amount of cash or securities deposited by him with the division under section thirty-four E. The division shall retain such cash or securities deposited as aforesaid and shall not deliver the same or the balance thereof to the registrant or his order until the expiration of the time within which actions, the payment of judgments in which are secured by such deposit, may be brought against the registrant or the person responsible for the operation of the registrant's motor vehicle or trailer with his express or implied consent, nor in any case where a written notice is filed with the division stating that such an action has been brought against the registrant or other person responsible as aforesaid, until payment is made as provided in section thirty-four E or satisfactory evidence is presented to it that such action is finally disposed of; provided, however, that the division shall deliver the deposit, or the balance thereof, to the registrant or his order upon the substitution as provided in this chapter of a motor vehicle policy or bond for such deposit.

Section 34H. Immediately upon receiving or giving a written notice of cancellation of a motor vehicle liability policy or bond, the company issuing such policy or executing

such bond as surety shall notify the registrar in writing, who shall thereupon, as well as in case such company ceases to be authorized to transact business within the commonwealth and in case a deposit under section thirty-four E is not maintained as required by section thirty-four D or thirty-four E, notify the owner of the motor vehicle or trailer covered by such policy or by such bond that his registration shall be revoked unless he shall within five days after the sending of said notice by the registrar file with the registrar a new certificate.

The registrar shall immediately revoke the registration upon the failure of such owner within said five days to file such new certificate. A notice mailed by the registrar to the address given on the application for registration shall be deemed a sufficient notice, and an affidavit of the registrar or any person authorized by him to send such notice that such notice has been mailed in accordance with this section shall be deemed prima facie evidence thereof.

Whoever operates or permits to be operated a motor vehicle or trailer with knowledge that the motor vehicle liability policy or bond or deposit required by the provisions of this chapter has not been provided and maintained in accordance with this chapter shall be punished by a fine of not less than one hundred nor more than five hundred dollars or by imprisonment for not more than one year.

Section 34I. The registrar shall keep such records and books and publish and distribute such forms and information, subject to the approval of the division, as will facilitate the operation of the provisions of the eight preceding sections, and shall, upon the request of any person, furnish the name of the company issuing the policy or executing as surety the bond covering any particular motor vehicle or trailer or of any particular person appearing on his records as registrant of the same.

Section 34J. No action shall be maintained to recover for bodily injuries, or death at any time resulting therefrom, accidentally sustained by any person other than employees of the defendant who are entitled to payments or benefits under the provisions of chapter one hundred and fifty-two,

and arising out of the ownership, operation, maintenance or use upon the ways of the commonwealth, of any motor vehicle or trailer, unless notice in writing is given to the surety company executing as surety the motor vehicle liability bond covering such motor vehicle or trailer or to the insurance company issuing the motor vehicle liability policy covering such motor vehicle or trailer or to the registrant of such motor vehicle or trailer who has made a deposit of cash or securities under section thirty-four E, as the case may be, within thirty days after such accident specifying the time, place and cause of the injury or death. Such notice may be served on the agent who issued the policy or bond. If the person injured dies within the said period of thirty days, his executor or administrator may give such notice within thirty days after his appointment. If by reason of physical or mental incapacity it is impossible for the person injured to give the notice within the time required, he may give it within ten days after such incapacity has been removed, and if he dies within said ten days his executor or administrator may give such notice within thirty days after his appointment. If the person sustaining injuries or the personal representatives of a person killed are unable to give such notice by reason of lack of knowledge of either the person, or the register number of the motor vehicle or trailer, causing such injuries or death, such notice may be given as aforesaid within thirty days after the time such knowledge is acquired.

Any form of written communication signed by the person so injured, or some person on his behalf or by his executor or administrator, or by some person in behalf of such executor or administrator, which contains the information that the person was so injured, giving the time, place and cause of the injury or damage, shall be considered a sufficient notice.

A notice shall not be held invalid or insufficient solely by reason of any inaccuracy in stating the time, place or cause of the injury, if it is shown that there was no intention to mislead and that the party entitled to notice was not in fact misled thereby.

A notice given as aforesaid within the time required by this section and by an authorized person referring to the

injuries sustained and claiming damages therefor which omits to state the time, place or cause of the injury or damage, shall not be held to be invalid or insufficient, unless within five days after receipt of such notice, the company or registrant receiving it, or some person in its or his behalf, notifies in writing the person injured, his executor or administrator, or the person giving or serving such notice in his behalf, that his notice is insufficient and requests forthwith a written notice in compliance with law. If the person authorized to give such notice, within five days after the receipt of such request, gives a written notice complying with the law as to the time, place and cause of the injury, such notice shall have the effect of an original notice, and shall be considered a part thereof.

SECTION 3. Chapter twenty-six of the General Laws is hereby amended by inserting after section eight the following new section:—

Section 8A. There shall be a board of appeal on motor vehicle liability policies and bonds serving in the division of insurance and consisting of the commissioner of insurance, the registrar of motor vehicles, or a representative designated by either of them, and an assistant attorney general to be designated by the attorney general. The compensation of such representative, if not an employee of the commonwealth, shall be fixed by the board, subject to the approval of the governor and council. The commissioner of insurance or his representative shall be the chairman of the board. Any member of the board shall have power to summon and compel the attendance and testimony of witnesses and the production of books, records and documents and may administer oaths. Sections nine and eleven of chapter two hundred and thirty-three shall apply to the board of appeal and witnesses summoned before it. The fees of witnesses before the board for attendance and travel shall be the same as for witnesses before the superior court in civil cases and need not be paid nor tendered to them prior to their attendance, and shall be paid by the commonwealth upon the certificate of the board or a member thereof filed with the comptroller. An office and a room for hearing shall be pro-

vided by the commonwealth, when necessary, to be assigned by the governor and council, and the board may employ a stenographer. The board, with the approval of the governor and council, may make and amend reasonable rules and regulations to expedite and regulate hearings and the procedure before it.

SECTION 4. Chapter one hundred and seventy-five of the General Laws is hereby amended by inserting after section one hundred and thirteen the four following new sections:—

Section 113A. No motor vehicle liability policy as defined in section thirty-four A of chapter ninety shall be issued or delivered in the commonwealth until a copy of the form of the policy has been on file with the commissioner for at least thirty days, unless before the expiration of said period the commissioner shall have approved the form of the policy in writing, nor if the commissioner notifies the company in writing that in his opinion the form of said policy does not comply with the laws of the commonwealth, specifying his reasons therefor, provided that he shall notify the company in writing within said period of his approval or disapproval thereof, and provided, further, that such action of the commissioner shall be subject to review by the supreme judicial court; nor if it contains any exceptions or exclusions as to specified accidents or injuries or causes thereof; nor unless it contains in substance the following provisions: —

(1) That the policy be subject to the provisions of sections one hundred and twelve and one hundred and thirteen;

(2) That the policy shall not be cancelled by the insured unless the motor vehicle or trailer covered thereby has been transferred, lost, stolen or destroyed, or the insured substitutes therefor a deposit of cash or securities as provided in section thirty-four E of chapter ninety, and that no cancellation of the policy, whether by the company or by the insured, shall be valid unless written notice is given to the registrar of motor vehicles in such form as the division of highways may prescribe at least fifteen days prior to the effective date of such cancellation.

(3) That the policy, the written application therefor, if any, and any rider or endorsement, which shall not conflict

with the provisions of this chapter or section thirty-four A of chapter ninety, shall constitute the entire contract between the parties;

(4) That no statement made by the insured or on his behalf and no violation of the terms of the policy shall operate to defeat or avoid the policy so as to bar recovery within the limit provided in the policy by a judgment creditor proceeding under the provisions of said section one hundred and thirteen and clause (10) of section three of chapter two hundred and fourteen; and

(5) That if the death, insolvency or bankruptcy of the insured shall occur within the policy period, the policy during the unexpired portion of such period shall cover the legal representatives of the insured.

Any such motor vehicle liability policy shall be deemed to contain any such provision in substance when in the opinion of the commissioner the provision is stated in terms more favorable to the insured or to a judgment creditor than herein set forth, and such policy may contain such other provisions not inconsistent with this chapter or section thirty-four A of chapter ninety as may be approved by the commissioner.

The provisions of this section, except provisions numbered (1), (3) and (4), shall apply to motor vehicle liability bonds as defined in said section thirty-four A.

Section 113B. No company shall issue any motor vehicle liability policy or act as surety on any motor vehicle liability bond, both as defined in said section thirty-four A, until it has filed with the commissioner, in a form satisfactory to him, its classifications of risks and premiums relating thereto, nor until such premiums have been approved in writing by the commissioner as adequate, just, reasonable and non-discriminatory for the risks to which they respectively apply. In approving such premiums he shall not allow a loading for commissions to agents or brokers in excess of fifteen per cent of such premiums. He may from time to time whenever he deems it to be expedient and proper modify, alter or revise any such premium or any classification of such risks. Any premium approved by the commissioner

for any given classification shall be used by all companies issuing such policies or acting as sureties on such bonds. He may make and amend reasonable rules and regulations to facilitate the operation of this section. All decisions of the commissioner under this section shall be final.

A company shall file with its annual statement under section twenty-five, or whenever the commissioner may require, a schedule of its experience under such policies or bonds in such form as the commissioner may prescribe. The commissioner, his deputies or examiners shall at all times have access to the certificates defined in said section thirty-four A filed with the registrar of motor vehicles.

Section 113C. The commissioner shall forthwith notify the registrar of motor vehicles of the names of all companies as they become or cease to be authorized to issue motor vehicle liability policies or to act as surety upon motor vehicle liability bonds, both as defined in said section thirty-four A.

Section 113D. Any person, aggrieved by any cancellation of a motor vehicle liability policy or bond, both as defined in said section thirty-four A by the company issuing such policy or acting as surety on such bond or by the refusal of any company or an agent thereof on its behalf to issue such a policy or to act as surety on such a bond, may file a written complaint with the commissioner in such form as he may prescribe. The commissioner shall forthwith notify the board of appeal on motor vehicle liability policies and bonds of the filing of such complaint. The board or a member thereof shall give written notice to the parties of the time and place of the hearing on the complaint, which shall be not less than five days from the filing of the complaint. The board shall make a finding as to whether the cancellation or refusal to issue the policy or act as surety on such bond is proper and reasonable, and whether the complainant is a proper risk to whom to issue such policy or on behalf of whom to act as surety on such bond, which decision shall be final and binding upon the parties and shall be filed in the office of the commissioner as a public record. Notice in writing of such decision shall be given to the parties within

three days after the rendition thereof. If a company fails to comply with the decision of the board in favor of a complainant within five days after receipt of such notice, he may present a certified copy of the decision of the board to the superior court or any justice thereof, in any county, who shall enter a decree in accordance therewith and notify the parties. Such decree shall be final. If a company fails to abide by such decree, the commissioner shall, in the case of a foreign company, revoke or suspend its license as provided in section five until it shall comply with such decree, and, in case of a domestic company, he shall proceed against it as provided in section six and thereupon the supreme judicial court may enjoin it from further transaction of its business until it shall comply with such decree.

SECTION 5. Section one hundred and eighty-two of said chapter one hundred and seventy-five is hereby amended by inserting after the word "insurance" in the eleventh line the words: —, or any motor vehicle liability bond or any motor vehicle liability policy, both as defined in section thirty-four A of chapter ninety, — so to read as follows: — Section 182. No company, no officer or agent thereof, and no insurance broker shall pay or allow, or offer to pay or allow, in connection with placing or negotiating any policy of insurance or any annuity of pure endowment contract or the continuance or renewal thereof, any valuable consideration or inducement not specified in the policy or contract or any special favor or advantage in the dividends or other benefits to accrue thereon; or shall give, sell, purchase, or offer, give, sell or purchase anything of value whatsoever not specified in the policy; or shall give, sell, negotiate, deliver, issue, or authorize to issue or offer to give, sell, negotiate, deliver, issue or authorize to issue any policy of workmen's compensation insurance, or any motor liability bond or any motor liability policy, both as defined in section thirty-four A of chapter ninety at a rate less than that approved by the commissioner. No such company, officer, agent or broker shall at any time pay or allow or offer to pay or allow any rebate of any premium paid or payable on any policy of insurance or any annuity of pure endowment policy.

SECTION 6. Section one hundred and eighty-three of said chapter one hundred and seventy-five is hereby amended by inserting after the word "insurance," in the sixth line the words: —, or any motor vehicle liability bond or motor vehicle liability policy, both as defined in section thirty-four A of chapter ninety, — so as to read as follows: — Section 183. No person shall receive or accept from any company or officer or agent thereof or any insurance broker, or any other person, any such rebate or premium paid or payable on the policy or contract, or any special favor or advantage in the dividend or other benefits to accrue thereon, or any valuable consideration or inducement not specified in the policy or contract or any policy of workmen's compensation insurance, or any motor vehicle liability bond or any motor vehicle liability policy, both as defined in section thirty-four A of chapter ninety, at a rate less than that approved by the commissioner. No person shall be excused from testifying, or from producing any books, papers, contracts, agreements, or documents, at the trial of any other person charged with violating any provision of this and the preceding section on the ground that such testimony or evidence may tend to incriminate himself. But no person shall be prosecuted for any act concerning which he shall be compelled so to testify or produce evidence, documentary or otherwise, except for perjury committed in so testifying.

SECTION 7. Section forty-six of chapter one hundred and fifty-nine of the General Laws is hereby amended by striking out, in the eleventh line, the words "person or," by striking out, in the twelfth line, the words "or damage for causing the death of any person," by striking out, in the fifteenth line, the words "or damaged" and inserting in place thereof the words: — in his property, — and by striking out, in the sixteenth and seventeenth lines, the words "or the executor or administrator of any person whose death was so caused," — so as to read as follows: — Section 46. No license shall be granted under the preceding section until orders, rules or regulations shall have been adopted by the licensing authority in the town where the vehicle is to be operated, and any such authority may make such orders, rules or regulations.

No such motor vehicle shall be operated as aforesaid until the licensee of the vehicle, in addition to complying with all rules, orders and regulations of the licensing authority, shall have deposited with the treasurer of the town security by bond or otherwise, running to the town treasurer and approved by him and by the licensing authority, in such sum as the licensing authority may reasonably require, conditioned to pay any final judgment obtained against the principal named in the bond for any injury to property by reason of any negligent or unlawful act on the part of the principal named in said bond, his or its agents, employees or drivers, in the use or operation of any such vehicle. Any person so injured in his property, or his executor or administrator, may enforce payment of such judgment by suit on said bond in the name of the town treasurer. Such a bond shall be furnished in each town where said motor vehicle is licensed to operate, and shall, in each instance, be in accordance with the rules, orders and regulations of the licensing authority in such town.

SECTION 8. Section forty-seven of chapter two hundred and twenty-one of the General Laws is hereby amended by inserting after the word "property" in the fifth line the words: —, or lawfully engaged in acting as surety on motor vehicle bonds as defined in section thirty-four A of chapter ninety, — so as to read as follows: — Section 47. The preceding section shall not apply to any public service corporation or to any corporation lawfully engaged in the examination and insuring of titles to real property, or lawfully engaged in the business of insurance against liability for damages or compensation on account of injury to persons or property, or lawfully engaged in acting as surety on motor vehicle bonds as defined in section thirty-four A of chapter ninety, or lawfully engaged in assisting attorneys to organize corporations, or organized for and lawfully engaged in benevolent or charitable purposes, or organized under the authority of the commonwealth for the purpose of assisting persons without means in the pursuit of any civil remedy, or prohibit a newspaper from answering inquiries through its columns or any corporation from providing legal

advice or assistance to its employees, or a corporation lawfully engaged in the business of conducting a mercantile or collection agency or adjustment bureau from employing an attorney to give legal advice concerning, or to prosecute actions in court relating to, the adjustment or collection of debts and accounts only.

SECTION 9. Section five of chapter two hundred and twenty-nine of the General Laws, as amended by chapter four hundred and thirty-nine of the acts of nineteen hundred and twenty-two, is hereby further amended by inserting after the word "three" in the second line the words: — and subject to the provisions of section thirty-four J of chapter ninety in the case of any action brought hereunder by a person required to give notice by said section thirty-four J, — and by inserting after the word "commenced" in the eleventh line the words: — except as provided by section four of chapter two hundred and sixty, — so as to read as follows: — Section 5. Except as provided in sections one, two and three and subject to the provisions of section thirty-four J of chapter ninety in the case of any action brought hereunder by a person required to give notice by said section thirty-four J, a person who by his negligence or by his wilful, wanton or reckless act, or by the negligence or wilful, wanton or reckless act of his agents or servants while engaged in his business, causes the death of a person in the exercise of due care, who is not in his employment or service, shall be liable in damages in the sum of not less than five hundred nor more than ten thousand dollars, to be assessed with reference to the degree of his culpability or of that of his agents or servants, to be recovered in an action of tort, commenced, except as provided by section four of chapter two hundred and sixty, within two years after the injury which caused the death by the executor or administrator of the deceased, to be distributed as provided in section one.

SECTION 10. Section four of chapter two hundred and sixty of the General Laws, as amended by section one of chapter three hundred and nineteen of the acts of nineteen hundred and twenty-one, is hereby further amended by inserting after the word "towns", in the fourth line, the

words: — except those hereinafter provided for, — and by inserting after the word "libel" in the ninth line the words: — and actions of tort for bodily injuries or for death the payment of judgments in which is required to be secured by chapter ninety, suits by judgment creditors in such actions of tort under section one hundred and thirteen of chapter one hundred and seventy-five and clause (10) of section three of chapter two hundred and fourteen and suits on motor vehicle liability bonds under section thirty-four F of said chapter ninety, — so as to read as follows: — Section 4. Actions for assault and battery, false imprisonment, slander, actions against sheriffs, deputy sheriffs, constables or assignees in insolvency, for the taking or conversion of personal property, actions of tort for injuries to the person against counties, cities and towns except those hereinafter provided for and actions of contract or tort for malpractice, error or mistake, against physicians, surgeons, dentists, hospitals and sanitaria, shall be commenced only within two years next after the cause of action accrues; and actions for libel and actions of tort for bodily injuries or for. death the payment of judgments in which is required to be secured by chapter ninety, suits .by judgment creditors in such actions of tort under section one hundred and thirteen of chapter one hundred and seventy-five and clause (10) of section three of chapter two hundred and fourteen and suits on motor vehicle liability bonds under section thirty-four F of said chapter ninety shall be commenced only within one year next after the cause of action accrues.

Section 11. The provisions of section ten shall not operate to shorten the period within which any action or suit, in which the cause of action accrued prior to the taking effect of this section, may be brought.

Section 12. If any part, subdivision or section of this act shall be declared unconstitutional the validity of its remaining provisions shall not be affected thereby.

Section 13. This act shall not apply to the registration of motor vehicles or trailers for the current year or any part thereof and if the requirements of the constitution prerequisite to its submission on referendum to the people at the next

state election are complied with it shall not apply to such registration for the years nineteen hundred and twenty-six and nineteen hundred and twenty-seven; but if it is approved on such submission it shall apply to such registration for the year nineteen hundred and twenty-eight and for subsequent years. The provisions of section thirty-four J of chapter ninety of the General Laws, inserted by section two, and the provisions of sections seven to eleven, inclusive, shall take effect on January first of the year when the provisions of this act first apply to the registration of motor vehicles or trailers, and the provisions of section twelve shall take effect at the earliest time any other provision of this act takes effect.

On April 17, 1925, the Justices returned the following answer:

To the Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in the order numbered House 1194 and received on March 20, 1925, copy whereof is hereto annexed.

The questions are propounded with respect to a draft of a statute entitled "An Act requiring owners of certain motor vehicles and trailers to furnish security for their civil liability on account of personal injuries caused by their motor vehicles and trailers." That draft of statute is an appendix to a report of a joint legislative committee appointed in 1924 to study various problems relating to motor vehicles and their use on the highways, a copy of which was transmitted with the questions. It is stated in that report that in this Commonwealth the motor vehicle "causes death or injury to more than 20,000 persons in a single year" and that "550 fatal accidents, causing 578 deaths," occurred in the year 1923 from that cause alone. The report refers to an analysis showing that blame for substantially two thirds of those casualties rests on the operator of the motor vehicle. It also is stated in the report that owners of about thirty per cent of the registered automobiles have protected themselves

by insurance and that there are no means of ascertaining how many of the owners of the other seventy per cent are financially responsible, but that large numbers of persons injured and representatives of those killed have been unable to obtain financial redress. Manifestly the evil which the proposed statute is designed to diminish and in part remedy is appalling in its toll of life and suffering. It is common knowledge that the movement of the motor vehicle is or may easily become a danger to all others upon highways. It is not necessary to indulge in presumptions as to the existence of reasons for the enactment of the proposed statute. The report of the joint special committee discloses facts justifying the adoption of any rational means calculated to diminish the loss arising from injuries on public ways caused by motor vehicles. In this advisory opinion trailers are included in motor vehicles without further mention.

1. The power of the General Court to regulate travel over the public ways of the Commonwealth for the general welfare is extensive. It may be exercised in any reasonable manner to conserve the safety of travellers. No one has a right to use streets and other public places as he chooses without regard to the presence of others. It is an underlying conception of streets and highways that they shall at all times be reasonably safe and convenient for public travel and that travellers thereon in the exercise of due care may be secure from preventable danger. Numerous statutes to that end have been enacted from early times to the present. All highways now are laid out and established by public authority. Initial costs of construction and subsequent expenses for care, repair and replacement are charges against the public treasury. The Commonwealth itself, directly or through its governmental subdivisions of counties, cities, towns and districts, all subject to legislative control, is the owner either of the easement constituting the highway or of the fee, when that has been acquired. The Commonwealth as the sovereign power and the proprietor may do with its own as the General Court may direct, provided its action can be said to be in the public interest and not violative of constitutional guarantees. *Boston Fish Market Corp.* v.

*Boston,* 224 Mass. 31. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 414. *Treasurer & Receiver General* v. *Revere Sugar Refinery,* 247 Mass. 483. Regulations, pursuant to statute, prohibiting utterly the use of automobiles upon certain highways were held valid in *Commonwealth* v. *Kingsbury,* 199 Mass. 542. G. L. c. 90, §§ 18, 16. It has been said broadly that automobiles may be forbidden to use the streets. *People* v. *Rosenheimer,* 209 N. Y. 115, 120. *State* v. *Mayo,* 106 Maine, 62. A license to drive and a registration of motor vehicles have been required as prerequisite to their use on the public ways in this Commonwealth almost from their first appearance. The power to license imports the further power to withhold such license except upon compliance with prescribed conditions. The power to regulate, even to the extent of prohibition of motor vehicles from public ways, includes the lesser power to grant the right to use public ways only upon the observance of prescribed conditions precedent. The requirement that every owner before being allowed to register his motor vehicle shall provide security for the discharge of his liability for personal injuries or death resulting from the presence of such motor vehicle on the public ways cannot be pronounced unreasonable. It furnishes a degree of assurance of compensation to those rightly and carefully using the ways and injured by the carelessness of operators of motor vehicles. It may be thought that an indirect result of such regulation will be to cause the exercise of greater care on the part of such operators and of higher caution on the part of owners of motor vehicles in refusing to entrust them to careless operators. The requirement for security for the payment of the legal claims arising from personal injuries caused on highways by motor vehicles is an extension of the police power into a new field, so far as we are aware, but in our opinion it falls within the limits of the constitutional power of the General Court. It may be justified on several grounds.

The most important is the great uncompensated damage now caused by motor vehicles to innocent travellers upon the public ways. It is a part of the Declaration of Rights of our Constitution that "Every subject of the Commonwealth

ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character." Art. 11.

Another ground upon which the validity of the proposed statute may rest is that the motor vehicle is itself a dangerous instrumentality. Unless kept in good repair and equipped with adequate brakes and then driven on public ways with a high degree of care and skill, it is bound to become a source of imminent danger to other travellers. Chief Justice Shaw said in *Commonwealth* v. *Alger*, 7 Cush. 53, 84, 85: " . . . it is a settled principle, growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community." That principle is precisely applicable to the situation presented by the committee report and the proposed statute.

Liability has been imposed, sometimes by the common law and sometimes by statute, for the harmful consequences of conduct not founded on negligence but flowing from the possession or control of dangerous instrumentalities. It is a doctrine of the common law that "the person, who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril; and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape." *Gorham* v. *Gross*, 125 Mass. 232, 238. *Mears* v. *Dole*, 135 Mass. 508, 510. *Shipley* v. *Fifty Associates*, 106 Mass. 194. *Sponatski's Case*, 220 Mass. 526, 531. *Fletcher* v. *Rylands*, L. R. 1 Ex. 265, 279. *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, 339. This doctrine has been extended by statute to the establishment of liability for injuries resulting without negligence and in spite of great care. Instances are fires communicated by locomotive engines, *Ingersoll* v. *Stockbridge & Pittsfield Railroad*, 8 Allen, 438, *St. Louis & San Francisco Railway* v. *Mathews*, 165 U. S. 1, and, in other jurisdictions, injuries received in hazardous occupations,

*Arizona Employers' Liability Cases*, 250 U. S. 400. It has commonly been thought that there is no more certain way of securing attention to the safety of human beings than by holding those responsible for dangers to heavy and certain liability for injuries arising therefrom. 250 U. S. at page 432. Legal liability without financial responsibility is a barren right to one who sustains injury by the wrongful act of another. A peremptory requirement that, before one brings a dangerous instrumentality into public places, the owner must first provide adequate security that those who suffer personal injury through the negligent use thereof shall be assured of recompense would be no greater interference with fundamental rights than the instances just cited. The operation of such an instrumentality in public places is not a natural right. It is subject to reasonable regulation for the benefit of the general public.

The presence of an unregistered motor vehicle on the highways has been outlawed and declared a nuisance. G. L. c. 90, § 9. *Dudley* v. *Northampton Street Railway*, 202 Mass. 443, 447. *McDonald* v. *Dundon*, 242 Mass. 229, 232. Onerous consequences may be entailed on the owner of an instrumentality which is a nuisance, unless used conformably to licensing laws and other police regulations. A pertinent illustration of this principle is found in G. L. c. 139, § 9, whereby the owner of real estate, on which a nuisance is maintained by his tenant, may be put to severe property loss under specified conditions. *Chase* v. *Proprietors of Revere House*, 232 Mass. 88. There are several States in the Union where workmen's compensation acts are compulsory instead of optional. Under those statutes the payment of compensation to the injured employee is secured in whole or in part by provisions for compulsory insurance by the employer. Such statutes have been upheld as not violative of the Constitution of the United States. *New York Central Railroad* v. *White*, 243 U. S. 188. *Hawkins* v. *Bleakly*, 243 U. S. 210. *Mountain Timber Co.* v. *Washington*, 243 U. S. 219. *Middleton* v. *Texas Power & Light Co.* 249 U. S. 152. Such a requirement for insurance by employers as security for personal injury to their employees seems to us

a greater stretch of legislative power than is contemplated by the proposed bill.

The statute G. L. c. 159, § 46, already requires, from the licensee of a motor vehicle operated upon a public way for the carriage of persons for hire under the special circumstances there described, a bond conditioned to pay any final judgment obtained against the principal named in the bond for causing the death of or injury to any person by reason of the negligence in the operation of such motor vehicle. The constitutionality of this and of like statutes has been upheld.  *Commonwealth* v. *Slocum*, 230 Mass. 180.  *Packard* v. *Banton*, 264 U. S. 140, and cases there collected.  The bonds thus required are broad enough in their conditions to include damages caused to other travellers upon the highway as well as to passengers.  While the power of the Legislature over common carriers on highways is in general more comprehensive than over other travellers, these decisions go far toward supporting the validity of a statute requiring security from all owners of motor vehicles against injury, caused by negligence in their operation, to other travellers on the ways.

The extension of liability of the owner of a motor vehicle so as to include personal injuries caused by it while being negligently operated by his express or implied consent, even though not by himself, his servant or agent, violates no constitutional provision.  Under the common law of this Commonwealth mere· ownership of a motor vehicle without evidence that it is being driven by his servant is not enough to fasten on the owner liability for its negligent operation.  *Trombley* v. *Stevens-Duryea Co.* 206 Mass. 516.  *Phillips* v. *Gookin*, 231 Mass. 250.  Such a rule of the common law may be changed by statute.  *Duggan* v. *Bay State Street Railway*, 230 Mass. 370, 380.  Such extension of liability stands on the same footing as the statute making the owner of a dog liable to a person injured by it in double the amount of damages sustained even though the dog is in the possession and keeping of another person not the agent, servant or representative of the owner.  The validity of that statute has never been doubted.  G. L. c. 140, § 155.  *Galvin* v. *Parker*, 154 Mass. 346.

The proposed extension of liability and the requirement for security by the owner of a motor vehicle for compensation of personal injuries caused by it do not differ in principle from the civil liability act affording remedy to those injured by an intoxicated person against the person who caused such intoxication in whole or in part by sale or gift of intoxicating liquor, which has been on our statute books in some form since the enactment of St. 1855, c. 215, § 22. G. L. c. 138, § 49. The bond required to be given by a licensee under the law as to the sale of intoxicating liquors in force prior to the · adoption of the Eighteenth Amendment to the Federal Constitution was a security for the collection of such damages. That statute has been held to be constitutional. *Howes* v. *Maxwell*, 157 Mass. 333. *Treasurer of Boston* v. *American Surety Co. of New York*, 217 Mass. 507. In substance and effect that statute was compulsory insurance against injuries at least as remote from conduct made the basis of liability as that proposed in the present bill. '

The general principle which sustains this aspect of the proposed bill is that, when the general welfare of travellers on the highway in the opinion of the Legislature is threatened by and demands protection against a specific evil, any rational means may be adopted to remedy the evil. *John P. Squire & Co.* v. *Tellier*, 185 Mass. 18. *Commonwealth* v. *Strauss*, 191 Mass. 545.

The conclusion that this requirement may be made is supported in our opinion by the reasoning of *Hendrick* v. *Maryland*, 235 U. S. 610, and *Kane* v. *New Jersey*, 242 U. S. 160.

It follows that the answer is, Yes, to question 1 and its subdivisions (a) and (b).

2. We understand the inquiry presented by the second question to mean, whether the selection of owners of motor vehicles as alone required to provide security for injuries caused by such property violates the Constitution. The proposed statute omits from such requirement the owners of horse drawn vehicles and of electric railways and steam railroads and the operators of motor vehicles who are not also owners. Reasonable classification in the selection of sub-

jects for legislation is always permissible to the lawmaking power. It is only when such classification is arbitrary or irrational that it comes in conflict with the Constitution. What shall be included and what excluded from the sweep of any statute demand the exercise of discrimination, insight and sound judgment. Railways and railroads have been too long the objects of special laws to be open to discussion as proper subjects for constituting special classes. The danger from horse drawn vehicles is so small compared with that from motor vehicles as to afford a sound basis for classification. The omission of operators from the scope of the statute, when not owners of motor vehicles, is not unlawful discrimination. It well may be thought that responsibility ought to be fastened upon the owner of the dangerous instrumentality. Burdensome liability is fastened upon railroads and some other corporations for causing the death of a human being, from which their servants and agents, through whose conduct such liability arises, are exempted. See *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8, for a review of those statutes. The classification in the proposed statute is supported by the principle of numerous decisions. *Commonwealth* v. *Libbey*, 216 Mass. 356, 358. *Young* v. *Duncan*, 218 Mass. 346, 353. *Bogni* v. *Perotti*, 224 Mass. 152, 157. *Ashley* v. *Three Justices of the Superior Court*, 228 Mass. 63, 78. *Commonwealth* v. *Titcomb*, 229 Mass. 14. *Commissioner of Corporations & Taxation* v. *Coöperative League of America*, 246 Mass. 235, 239.

The answer to the second question is, No.

3. The kind of security for the payment of liability arising from the operation of motor vehicles on public ways within reasonable limits may be established by the General Court. An option to the owner of the motor vehicle between the deposit of cash or securities with a public officer and the furnishing of a surety bond or a policy of insurance offends no provision of the Constitution. The primary object is to afford security to the traveller injured on the public way through the negligent operation of the motor vehicle. The difference between these diverse methods of furnishing security is not an inequality of law in a constitutional sense.

602        SUPPLEMENT.        [251

It is not distinguishable in principle from the option afforded by G. L. c. 90, § 21; c. 276, §§ 57, 79, for depositing cash or various securities in behalf of or by one charged with crime and desiring bail.

The answer to the third question is, Yes.

4. (a) The proposed bill if enacted into law would not be unconstitutional in our opinion because it does not apply to nonresident owners or operators of motor vehicles not registered under our laws. The use of such motor vehicles may be found by the Legislature to be small in comparison with that of such vehicles registered in accordance with our laws. The expense of enforcing the law with respect to them may be found to be excessive. It may be that there are other difficulties in the way. Moreover, a classification including only motor vehicles registered under our statutes cannot be pronounced unreasonable. Nonresident owners of motor vehicles or motor vehicles not registered under our laws doubtless might be included within the law. *Hendrick* v. *Maryland*, 235 U. S. 610. *Kane* v. *New Jersey*, 242 U. S. 160. This omission would not be fatal to the proposed bill. Legislative classification may rest upon narrow distinctions.

(b) The exclusion of motor vehicles owned by the Commonwealth, or "by a corporation subject to the supervision and control of the department of public utilities, or by a street railway company under public control," cannot be denounced as arbitrary. It has a reasonable relation to the public safety. It does not destroy equality before the law nor create special privilege. It is a classification which may be thought to rest on sound judgment. This classification falls within the authority of *Packard* v. *Banton*, 264 U. S. 140.

(c) The requirement that persons operating motor vehicles as common carriers of passengers for hire as described in G. L. c.159, § 45, shall furnish both a liability bond or policy as security for the benefit of those suffering personal injury or entitled to recover damages for death and also a bond as security for property damages, is not open to objection on constitutional grounds. Common carriers of passengers may

be made a class by themselves for special legislative treatment, as distinguished from other travellers on the ways. The right to use public ways for the purpose of common carriage of passengers for hire requires special license and may be made subject to special regulations. And among common carriers of passengers the classification here proposed is not open to attack on constitutional grounds. This point is settled by authority. *Commonwealth* v. *Slocum*, 230 Mass. 180. *Packard* v. *Banton*, 264, U. S. 140. *Commonwealth* v. *Stodder*, 2 Cush. 562.

(d) The bill is not unconstitutional because excluding from its benefits such employees of the owner of the motor vehicle or of any person responsible for its operation as are entitled to benefits under the workmen's compensation act. Such employees are already afforded a kind of relief under the law, which, when applicable to the conditions of injury, well may be thought more advantageous, in certainty of payment and exoneration from expenses and delay incident to an action at law, than that provided by the proposed statute. There would be strong resemblance to inequality in permitting such employees a double remedy and double damages for the same injury.

(e) No constitutional infirmity in the proposed bill arises from its omission to provide security for personal injury or death occurring on private property. The principle upon which the proposed statute rests is the protection of travellers upon public ways. Different questions of policy might be involved with respect to injuries sustained on private property, such as diversity in dangers and conditions, unlikeness in rights, risks and obligations, and other dissimilarities in circumstances.

(f) Restriction of security to claims for personal injuries and death and exclusion of those for damage to property violates no constitutional provision. Under art. 10 of the Declaration of Rights, "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws." But the Legislature is not thereby prohibited from making special provision for the security of life and limb, and leaving prop-

erty to the protection afforded by the common law. Such classification is permissible to the legislative department.

(g) It is provided in the proposed act that an applicant for the registration of a motor vehicle must either (1) procure a motor vehicle liability bond or policy, or (2) deposit cash or securities with a public official. The liability bond or policy must furnish security for the satisfaction of all judgments against the obligor or insured arising from his motor vehicle on the public ways "to the amount or limit of at least five thousand dollars on account of injury to or death of any one person, and, subject to such limits as respects injury to or death of one person, of at least ten thousand dollars on account of any one accident injuring more than one person." The applicant for registry may, at his option, in place of procuring a motor vehicle liability bond or policy, deposit with the division of highways of the department of public works "cash in the amount of five thousand dollars or bonds, stocks or other evidences of indebtedness satisfactory to the division of a market value of not less than five thousand dollars as security for the payment" in like manner of all such judgments "to the amount or limit of at least five thousand dollars on account of bodily injury or death." Provision is made for the payment by the division of any execution issued on such judgment, but not in excess of $5,000, out of such cash or the proceeds of sale of such securities. Further provision is made that the "division shall, whenever the amount of such deposit from any cause falls below" the specified amount, require at the option of the registrant the deposit of additional cash or securities or a motor vehicle liability bond or policy. We interpret these provisions as to deposit of cash or securities in place of bond or policy to mean that whenever the payment of an execution or executions or any other cause reduces such cash or securities below $5,000, new cash or securities shall be forthwith demanded and deposited in order to maintain the required sum of $5,000 as security. It also is provided that additional deposit of cash or securities may be required whenever an action is commenced, payment of judgment in which is secured by such deposit.

There is an apparent inequality in these provisions in that, where a bond or policy is furnished by the registrant, a maximum security of $10,000 is available; while, where a deposit is made, that maximum security is $5,000. This inequality is apparent rather than real.

The main purpose of the statute is to afford security to those of the public who suffer injury of the kind described. From that standpoint it is to be observed that the result of these several provisions is that, in case of a deposit of securities, the original judgment is satisfied at once out of such deposit; while in the case of a liability bond, the holder of the judgment may be obliged to bring an action against the surety company on the bond, or, in the case of an insurance policy, to enforce the liability of the insurance company.

No discussion is required to demonstrate that an instantly available fund of cash or its equivalent is better security for the satisfaction of a judgment than a bond or even an insurance policy. Moreover, sometimes, though rarely, surety companies or insurance companies become bankrupt. Some concession in face value may be made by the Legislature on account of the superior quality of cash security over any form of suretyship or insurance.

The proposed statute further undertakes to provide that, in case of a deposit, there shall always be a minimum of at least $5,000 available as security. It may be that there is an overwhelming likelihood that registrants making a deposit rather than furnishing the bond or policy will be possessed of other financial resources, so that a personal judgment or judgments against them aggregating $5,000 might be collectible, and so that further deposit would be made on demand. The General Court within reasonable limits may judge of these matters and act accordingly. These provisions are somewhat analogous to the exemption of certain banks, banking institutions and loan companies from the provisions of St. 1908, c. 605, § 6 (see now G. L. c. 140, § 114), respecting the making of small loans, which was upheld as not obnoxious to the Constitution in *Mutual Loan Co.* v. *Martell,* 200 Mass. 482, affirmed in 222 U. S. 225, and in *Dewey* v. *Richardson,* 206 Mass. 430.

The option to the registrant in this respect offends no constitutional guarantee. It is open to all registrants alike upon equal terms and without discrimination.

(h) The reasons already stated are sufficient to show that no constitutional objection can be urged soundly on the ground that the bill is made applicable indifferently to all classes and kinds of motor vehicles. The danger to the public safety may be thought by the Legislature to inhere in the operation of all such vehicles and to require the same kind of security with respect to all.

(i) Regulations of the kind prescribed by the proposed bill may apply to interstate commerce on the same terms as to domestic travellers. The States cannot enact laws for the specific end of regulating interstate commerce; but they may enact laws for the protection of the general public, against apprehended harm including that caused by those engaged in interstate commerce. The power of the several States to " provide for the establishment, maintenance, and control of public highways, turnpike roads" and like conveniences and necessities has been recognized in numerous decisions of the United States Supreme Court. *New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 650, 661. *Fair Haven & Westville Railroad* v. *New Haven,* 203 U. S. 379, 390. "Even interstate business must pay its way," *Postal Telegraph-Cable Co.* v. *Richmond,* 249 U. S. 252, 259. That proposition is apt to describe the burden which a State may place upon interstate commerce, in common with all other business and pleasure using highways, for the protection of the life and safety of other travellers. There is a great field for the valid exercise of the police power by the several States for the common welfare although, incidentally but not primarily and mainly, interstate commerce may be affected and regulated. See *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 578, for a collection of cases. *Commonwealth* v. *O'Neil,* 233 Mass. 535. *Western Union Telegraph Co.* v. *Commercial Milling Co.* 218 U. S. 406. *Missouri Pacific Railway* v. *Larabee Flour Mills Co.* 211 U. S. 612. *Atlantic Coast Line Railroad* v. *Georgia,* 234 U. S. 280. *Price* v. *Illinois,* 238 U. S. 446. That principle has

been given direct application to State statutes touching the operation of motor vehicles upon the highways of a State both by nonresidents and by those engaged in interstate commerce. "In the absence of national legislation covering the subject a State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles — those moving in interstate commerce as well as others." *Hendrick* v. *Maryland*, 235 U. S. 610, 622. *Kane* v. *New Jersey*, 242 U. S. 160, 168.

There is nothing inconsistent with the conclusion that the proposed statute would be valid in this respect in the recent decisions of *Michigan Public Utilities Commission* v. *Duke*, 266 U. S. 570, where compulsory interstate commerce as a common carrier was sought to be imposed upon one carrying on interstate commerce as a private person, nor in *Buck* v. *Kuykendall*, 267 U. S. 307, and *George W. Bush & Sons Co.* v. *Maloy*, 267 U. S. 317, (both decided March 2, 1925), where the element of discretionary power altogether to exclude interstate commerce was involved, in all three decisions State statutes being stricken down.

We answer, No, to the fourth question including all its subdivisions.

5. The Legislature has large powers in the regulation of the business of insurance. That business is of a peculiar nature. It affects large numbers of people and is intimately connected with the general welfare. The form of fire insurance policies has been prescribed by statute in this Commonwealth for many years. Regulation of the business of insurance may be supported both as an exercise of the police power for the common good and on the ground that corporations, foreign and domestic, being creatures of legislative power, are subject to reasonable control as conditions of transacting business. Policies of insurance indemnifying owners against losses due to the negligence of themselves or their servants in the operation or use of vehicles may be enforced for their own benefit by or in behalf of persons injured by such negligence. These principles are settled by numerous authoritative decisions. *Lorando* v. *Gethro*, 228 Mass.

181. *New York Life Ins. Co.* v. *Hardison,* 199 Mass. 190. *Delaney* v. *Ancient Order of United Workmen of Massachusetts,* 244 Mass. 556, 567. *Lajoie* v. *Milliken,* 242 Mass. 508, 522, 523. *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389. *La Tourette* v. *McMaster,* 248 U. S: 465, 467. *National Union Fire Ins. Co.* v. *Wanberg,* 260 U. S. 71. *Merchants Mutual Automobile Liability Ins. Co.* v. *Smart,* 267 U. S. 126.

A prohibition against cancellation by the insured or principal of a motor liability policy or bond during its term, except upon transfer, loss, theft or destruction of the motor vehicle or the substitution of a deposit of cash or securities, would not transcend legislative power. When once it is established that insurance may be made compulsory for the protection of the public safety, it follows as a necessary consequence that, so long as the ownership of the motor vehicle is retained, the kind of protection afforded by insurance may be required to continue. The maximum period of insurance for a motor vehicle under one policy or bond is the term of registration, which does not exceed one year.

The provision that no statement made by or on behalf of the insured and no violation of the terms of the policy shall defeat the claim of a judgment creditor, injured by negligence in the operation of the insured motor vehicle, proceeding in accordance with the statute to collect damages permitted by the proposed bill, does not offend against any provision of the Constitution.

The main object of the bill is to protect careful travellers on the highway injured by negligence in the operation of motor vehicles and to afford them some redress for such injuries. The legislative question involved in this aspect is this: When a financially irresponsible owner or operator of a motor vehicle, insured by a policy or bond procured by some material misrepresentation, negligently injures another traveller on the highway in the exercise of due care, which of two innocent persons must suffer, the injured traveller, or the insurer or surety? The Legislature may believe that the opportunities open to the insurer or surety for inquiry and investigation before issuing the policy or signing the

bond are such as to afford it substantial protection against harm.   The insurer or surety may be thought to be in much better position to defend itself in these particulars than is the injured innocent traveller.   The proposed bill leaves to the insurer or surety its full rights against the registrant of the motor vehicle.   The insurer or surety is a corporation conducting a business largely under the control of the Legislature, as already pointed out.   General legislation to the effect that contracts shall be binding upon the parties notwithstanding misrepresentation and fraud entering into their making, or infraction of their material provisions, doubtless would be an invasion of fundamental rights.   The present bill does not go to that extent.   The power is reserved to the insurer or surety to cancel the policy or bond on reasonable notice.   A contract induced by fraud or deceit is voidable and not a nullity.   No liability can arise out of a void contract.

Statutes rendering irrelevant, even as between the parties, misrepresentations not materially increasing the risk and not made with intent to deceive, have been recognized as valid.   *Everson* v. *General Accident, Fire & Life Assurance Corp. Ltd.* 202 Mass. 169.   *McDonough* v. *Metropolitan Life Ins. Co.* 228 Mass. 450, 452.   *Foss* v. *Mutual Life Ins. Co. of New York,* 247 Mass. 10.   See also *Colonial Development Corp.* v. *Bragdon,* 219 Mass. 170.

This provision is but a slight extension of the principle already established that the rights of a mortgagee under a policy of insurance shall not be affected by defaults of the mortgagor.   *Palmer Savings Bank* v. *Ins. Co. of North America,* 166 Mass. 189.   *Commonwealth* v. *Kaplan,* 238 Mass. 250, 254.   *Commonwealth* v. *Cali,* 247 Mass. 20, 24.

Giving due weight to all of these factors and not singling out one as decisive, we are of opinion, though with some hesitation that it cannot be said that § 4 of the proposed bill, in amending G. L. c. 175 by the addition of § 113A (4), exceeds the constitutional power of the Legislature.

The manifest purpose of the proposed statute being to protect travellers in the exercise of care upon the highway, the requirement that the liability policy or bond shall cover all claims, irrespective of number, arising from personal injuries

due to the motor vehicle, violates no constitutional guarantee. The scope of the risk incurred by the insurer or surety doubtless will be reflected in the premium to be charged.

The same reasoning supports the validity of prohibition of exclusions or exceptions as to specified accidents or injuries or the causes thereof. These questions are to be settled by the practical wisdom of the Legislature applied to the subject matter. *National Union Fire Ins. Co.* v. *Wanberg*, 260 U. S. 71.

The answer to question 5 in respect both to A with its several subdivisions and to B is, Yes.

6. The sixth question relates in general to the making of classifications of risks and the establishment of premiums and the modification, alteration or revision of the same. The subject of rate making by the Legislature or by public officers or boards has not been discussed in many decisions in this Commonwealth. No question hitherto has arisen respecting insurance premiums or rates. *Donham* v. *Public Service Commissioners*, 232 Mass. 309, 315. *Gritta's Case*, 241 Mass. 525, 528. *Boston* v. *Edison Electric Illuminating Co. of Boston*, 242 Mass. 305. *Opinion of the Justices*, 247 Mass. 589. When it has been settled that the business of insurance is so affected with a public interest as to be subject to general regulation for the common good, that goes far toward making valid the regulation of rates so as to be fair both to the insurer and the assured. The constitutionality of rate making as to insurance was settled under the Constitution of the United States, upon full discussion of underlying principles, by *German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389. The conclusion there reached in our opinion is equally sound under the Constitution of this Commonwealth.

A fundamental principle of rate making by public authority is that in general the rate so established must be sufficient to yield a fair return on the reasonable value of the property used or invested for doing the business after paying costs and carrying charges. Rates not sufficient to yield such return are unjust, unreasonable and confiscatory. That is the general rule. The making of rates may be treated as a legislative or executive function. "In all such cases, if the

owner claims confiscation of his property will result, the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment." *Ohio Valley Water Co.* v. *Ben Avon Borough,* 253 U. S. 287, 289. That statement is equally interpretative of arts. 1, 10, and 11 of the Declaration of Rights of the Constitution of this Commonwealth. This principle is as applicable to insurance premiums as it is to rates of public utilities narrowly defined.

Whenever heretofore the General Court has made provision for the fixing of rates by public authority, there has always been, so far as we are aware, express provision for such review by the courts as to satisfy constitutional requirements. See G. L. c. 25, § 5; c. 152, §§ 13, 11.

Reasonable presumptions are indulged in favor of the constitutionality of any act of a public body brought before the courts for review. But there must be some provision for judicial examination of rates when fixed by public authority. *Missouri* v. *Public Service Commission of Missouri,* 262 U. S. 276. *Bluefield Water Works & Improvement Co.* v. *Public Service Commission of West Virginia,* 262 U. S. 679.

The answer to the sixth question and its several subdivisions is that the provisions there enumerated will be constitutional if provision is made for a judicial review of the premiums there to be established by the commissioner of insurance, and not otherwise.

7. The reasons already stated in answering question 6 require that question 7 be answered, Yes.

8. The substance of the eighth question is whether provisions of the proposed bill in §§ 3 and 4 are constitutional to the effect that there shall be a board of appeal on motor vehicle liability policies and bonds with power, after hearing, to make a final decision on the questions, (1) whether a cancellation of a policy or bond by a company liable thereunder, or a refusal to issue a policy or to act as surety on a bond, is proper and reasonable, and (2) whether the applicant for such policy or bond is a proper risk. If such decision,

when in favor of a complainant, shall not be complied with by the company within five days after notice thereof, then, on presentation of a certified copy of such decision, the Superior Court "shall enter a decree in accordance therewith." If the company fails to abide by such decree so entered, the commissioner shall, in case of a foreign company, suspend or revoke its license, and in the case of a domestic company, shall proceed under G. L. c. 175, § 6, for an injunction against its doing business until there shall be compliance with the decree by the company.

The proposed act is confined in its scope to motor vehicle liability policies and bonds obligating corporations. No one except a corporation can issue such a policy or become surety on such a bond. That kind of business may be confined to corporations. *German Alliance Ins. Co.* v. *Lewis*, 233 U. S. 389, 412. If in the original charters of such corporations the substance of §§ 3 and 4 of the proposed act had been inserted, they would have been made the conditions upon which the corporations came into existence and accepted their franchises. A corporation can raise no question as to the constitutionality of a proceeding in accordance with the charter which it was content to accept. Having consented to come into being subject to these limitations, it could not be heard to complain of them. *Rockport Water Co.* v. *Rockport*, 161 Mass. 279. *Interstate Consolidated Street Railway* v. *Massachusetts*, 207 U. S. 79, 84. *Selectmen of Clinton* v. *Worcester Consolidated Street Railway*, 199 Mass. 279, 285. Every charter of a corporation granted since March 11, 1831, is subject to amendment or alteration, and every corporation organized under General Laws is subject to such laws as may hereafter be passed affecting or altering its rights or duties. G. L. c. 155, § 3. All insurance or surety corporations established since 1831 took their corporate existence subject to these provisions of law and cannot complain of their exercise. This reserved power is not unlimited. It cannot be exercised arbitrarily or so as to violate fundamental principles of justice; but it is not exceeded so long as the object of the charter is not defeated or essentially impaired and property and rights acquired upon the faith of the charter are not taken away. The State may

prescribe the liabilities within reasonable limits under which corporations created by its laws may do insurance business in the future where there is, as in this Commonwealth, express reservation of power to amend the charters of corporations, insurance being a business which has become of public concern and hence subject to public regulation.

The several features of the proposed bill set forth in the eighth question as provisos constitute serious limitations upon customary methods of conducting the insurance business. The question whether a particular risk shall be assumed by an insurer or surety is an important factor in the conduct of such business. Health, age, and susceptibility to disease form the basis of acceptance or rejection of most applicants for life insurance. Character, physical capacity, sight, hearing, financial responsibility, record of past conduct, personal habits, nature and extent of business and general reputation are among the elements of essential significance in determining whether motor vehicle liability bonding or insurance for any particular applicant shall be undertaken. To subject the determination of such a vital question by an insurer or surety to review is a great interference with freedom of contract. The right to freedom of contract is secured as a general rule by the constitutions of Commonwealth and Nation; but there are exceptions where legislative interference with that right is permissible. We are of opinion that the proposed bill in this aspect does not transcend legislative power. The right of the citizen to register a motor vehicle whereby he may travel upon the ways is made strictly conditional upon his depositing cash or securities or upon procuring a motor vehicle liability policy or bond. This, too, is a great interference with freedom of action. The refusal by corporations to issue such policy or sign such bond may drive one out of business or seriously impair his convenience. Where such paramount interests are at stake with sole reference to the use of public ways provided wholly at the expense of the government, there is constitutional basis for legislative regulation to the end that no injustice may be done. Unwarranted discrimination may arise against certain applicants. Instances may arise of honest difference of opinion whether a policy or bond

ought to be issued at all, or whether, after issuance, it ought to be cancelled. To provide an impartial administrative tribunal to settle such controversies, although going to the verge of power, cannot in our opinion be pronounced in excess of the authority conferred by the Constitution upon the General Court. It follows that a statute such as that here proposed, as to the board of appeal and its powers, would be valid in the main in its effect on existing domestic insurance corporations or such as may be hereafter organized. *New York Life Ins. Co.* v. *Hardison,* 199 Mass. 190, 198, 199. *Commonwealth* v. *Boston & Northern Street Railway,* 212 Mass. 82, 85. *Lorando* v. *Gethro,* 228 Mass. 181, 187. *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95, 113. *Chicago, Milwaukee & St. Paul Railroad* v. *Wisconsin,* 238 U. S. 491, 502. We think that the proposed bill upon this point is distinguishable from cases like *Chas. Wolff Packing Co.* v. *Court of Industrial Relations,* 262 U. S. 522, *Adkins* v. *Children's Hospital,* 261 U. S. 525, *Chicago, Milwaukee & St. Paul Railway* v. *Polt,* 232 U. S. 165, *Coppage* v. *Kansas,* 236 U. S. 1, and *Chastleton Corp* v. *Sinclair,* 264 U. S. 543.

That which a State may do with corporations of its own creation, it may do with foreign corporations admitted to do business within its borders as a condition of their continuance of business, provided in other respects no constitutional obstacle is encountered. These propositions have been applied to corporations doing business of insurance. *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557, 566.

The penalties which may be enforced under the proposed act against the company for failure to comply with decision of the board of appeal are not in excess of legislative power to impose. A corporation which refuses to conduct its business in accordance with valid laws cannot complain if its right to transact business is suspended or revoked. *National Fertilizer Co.* v. *Fall River Five Cents Savings Bank,* 196 Mass. 458. *New York Life Ins. Co.* v. *Hardison,* 199 Mass. 190.

The provision that the finding of the appeal board shall be "final and binding upon the parties" violates no part of the Constitution. Doubtless that provision means or must be construed to mean that findings of fact are final, not that there is not some means of correcting crucial errors of law.

A provision like this stands on the same constitutional footing as findings of fact made by other boards or commissions. *National Dock & Storage Warehouse Co.* v. *Boston & Maine Railroad,* 227 Mass. 197. *Fall River* v. *Public Service Commissioners,* 228 Mass. 575. *Pigeon's Case,* 216 Mass. 51, 55. *Renado* v. *Lummus,* 205 Mass. 155, 158. *Weymouth, petitioner,* 251 Mass. 359. The principle stated in *Commonwealth* v. *Maletsky,* 203 Mass. 241, and similar decisions, has no relevancy to this part of the proposed act.

The board of appeal as constituted by the proposed act is a purely administrative tribunal. It is in no sense a court, although it may exercise *quasi* judicial functions. There is established by art. 30 of the Declaration of Rights a sharp, mandatory and unescapable division between the executive, legislative and judicial departments of government, and an absolute prohibition against each one from exercising functions of either of the others. In view of this command of the Constitution, it is beyond the power of the Legislature to require any court merely to register a mechanical approval of the doings of an administrative or executive committee, without examination as to the legal merits of such doings. Courts in reaching decisions are bound to exercise an independent judicial function. Simply to set in motion machinery perfunctorily and inevitably leading to a specified final judgment, without first exercising an untrammelled decision in accordance with established constitutional and legal principles, would not be judicial work. A court cannot be made an automatic adjunct of an administrative board. Judicial work to be performed in a judicial manner alone can be required of or performed by courts. *Cosmopolitan Trust Co.* v. *Mitchell,* 242 Mass. 95, 116, and cases there collected. *Attorney General* v. *Pelletier,* 240 Mass. 264, 296, and cases there collected. *Muskrat* v. *United States,* 219 U. S. 346. See *Keller* v. *Potomac Electric Power Co.* 261 U. S. 428.

The words of the proposed act, if enacted into law, requiring the Superior Court to enter a decree in accordance with the finding of the appeal board doubtless would be interpreted to mean, in order to save its constitutionality, that such decree should be entered after a judicial examination and inquiry as would be required by the law in the

light of that finding. *McNicol's Case*, 215 Mass. 497, 501. *Brown's Case*, 228 Mass. 31, 38. *Bell's Case*, 238 Mass. 46, 52. *Gillard's Case*, 244 Mass. 47, 55.

The provision of the proposed act to the effect that the decree of the Superior Court "shall be final" presents no constitutional difficulty. It was said in *Renado* v. *Lummus*, 205 Mass. 155, 158, with ample citation of authorities, that "Where jurisdiction is given to a court or magistrate by a statute, and there is no provision for an appeal, the decision of the court or magistrate is final." Nevertheless, such decree when entered would be subject to the limited review available by writ of certiorari. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542. *Commissioner of Public Works of Boston* v. *Justice of the Municipal Court of the Dorchester District*, 228 Mass. 12. *Young* v. *Duncan*, 218 Mass. 346, 354. A bill of review also might be maintained in appropriate instances. *Sterling's Case*, 233 Mass. 485, 490. These are extraordinary remedies and do not afford the equivalent of relief by appeal or exception. But that is not essential in the circumstances disclosed as to the proposed bill.

The answer to the eighth question is, Yes.

9. The answer to the ninth question is, Yes. The reasons leading to that conclusion have been set forth in the answer to the eighth question.

10. All the particular questions contained in the order, aggregating a very considerable number, have been answered to the best of our ability. For the reasons stated at length in *Opinion of the Justices*, 239 Mass. 606, 612, we respectfully ask to be excused from making further answer touching other aspects of the proposed bill.

> ARTHUR P. RUGG.
> HENRY K. BRALEY.
> JOHN C. CROSBY.
> EDWARD P. PIERCE.
> JAMES B. CARROLL.
> WILLIAM C. WAIT.
> GEORGE A. SANDERSON.