# NATIONAL UNION FIRE INSURANCE COMPANY v. WANBERG.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH DAKOTA.

No. 32. Submitted October 6, 1922.—Decided November 13, 1922.

1. The law of North Dakota (Comp. Laws 1913, § 4902), providing that every insurance company engaged in the business of insuring against loss by hail in that State, shall be bound, and the insurance shall take effect, from and after twenty-four hours from the taking of an application therefor by a local agent of the company, and requiring such a company, if it would decline the insurance upon receipt of the application, forthwith to notify the applicant and the agent by telegram,—does not deprive such companies of their liberty of contract, and so of their property, without due process of law, or deny them the equal protection of the laws. P. 73.

2. The public interest arising from sudden and localized losses of crops inflicted by hail in North Dakota, and the high rate of insurance for such risks, as well as other distinctions, justify special legislative treatment of this kind of insurance. P. 74.

3. The fact that the time requirements of the statute may bear more heavily upon foreign than upon local insurance companies, is a circumstance incident to the conduct of business in the State, of which a foreign company cannot complain. P. 75.

4. The statute does not force the company to contract, since it does not compel acceptance of applications or deny the right to require prepayment of premium, or the right to cancel insurance in the usual way; the time allowed for rejecting applications, though short, is not unreasonable, under the circumstances; nor is the company left without means of distributing its risks in locality, so as to avoid disastrous losses from particular storms. P. 76.

5. The statute being valid, an applicant's agreement that his application shall not take effect until received and accepted at the company's agency, is void, and does not bind him. P. 77.

46 N. Dak. 369, affirmed.

ERROR to a judgment of the Supreme Court of North Dakota affirming a recovery upon a contract of hail insurance.

*Mr. Nathan H. Chase* and *Mr. William H. Barnett* for plaintiff in error.

*Mr. W. B. Overson* and *Mr. William G. Owens* for defendant in error.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This is a writ of error to the Supreme Court of North Dakota, brought to reverse its judgment affirming one of the District Court of William County of that State for $1,254.25, with interest and costs, upon a contract of hail insurance, against the National Union Fire Insurance Company, a corporation of Pennsylvania. The judgment rests for its validity on § 4902 of the Compiled Laws of North Dakota, 1913, as follows:

" Every insurance company engaged in the business of insuring against loss by hail in this State, shall be bound, and the insurance shall take effect from and after twenty-four hours from the day and hour the application for such insurance has been taken by the authorized local agent of said company, and if the company shall decline to write the insurance upon receipt of the application, it shall forthwith notify the applicant and agent who took the application, by telegram, and in that event, the insurance shall not become effective. Provided, that nothing in this article shall prevent the company from issuing a policy on such an application and putting the insurance in force prior to the expiration of said twenty-four hours."

The facts as stipulated were:

At ten o'clock in the forenoon of July 12, 1917, Wanberg on his farm at Tioga in North Dakota, signed and delivered to Everson, the agent of the defendant company, an application on the blank furnished by the company for insurance on his crops in the sum of $1,400 against loss or damage by hail or any other cause, except

fire, floods, winter kill or failure of insured to use good husbandry. He also paid to Everson the premium of $140. Everson had authority as agent only to solicit and receive such applications and the premium therefor and to transmit them to the company's western office at Waseca, Minnesota, where applications were acted upon and policies issued. The company was duly licensed under the laws of North Dakota to transact its business in the State. On the afternoon of July 13, 1917, Everson mailed the application with the premium less commission to the office at Waseca, where it arrived on Sunday, July 15th, and was delivered on Monday the 16th. In the meantime, at six o'clock in the evening of July 14th, a hail storm injured Wanberg's growing crops to the extent of the amount of the judgment. On Tuesday, July 17th, and without knowledge of the loss, the Waseca agency returned the application and premium to Everson saying that at that late date it would not be accepted. The application contained a provision that it should take effect from the day it was received and accepted, as evidenced by the issuance of a policy thereon at the Waseca, Minnesota, agency for the company.

The only error we can consider which was duly reserved is that § 4902 as applied to this case violates the Fourteenth Amendment in that it operates to deprive the company of liberty of contract, and therefore of its property, without due process of law, and of the equal protection of the laws.

The decision of this Court in *German Alliance Insurance Co.* v. *Lewis,* 233 U. S. 389, settled the right of a state legislature to regulate the conduct by corporations, domestic and foreign, of insurance as a business affected with a public interest. This includes provision for " unearned premium fund or reserve; . . . the limitation of dividends, the publishing of accounts, valued policies, standards of policies, prescribing investment, requiring

deposits in money or bonds, confining the business to cor-
porations, preventing discrimination in rates, limitation
of risks and other regulations equally restrictive." (233
U. S. 412.) It includes moreover the restrictions of de-
fense to recovery on policies and the forbidding of stipu-
lations to evade such restrictions. *Orient Insurance Co.
v. Daggs, 172 U. S. 557; Whitfield v. Aetna Life Insurance
Co., 205 U. S. 489. But it is said the line of possible
and valid regulation has here been passed by affirma-
tively imposing a contract on an insurance company be-
fore it has had a chance to consider the circumstances and
decide that it wishes to make it, indeed, that it declares
that to be an agreement with heavy obligation which is
in fact no agreement at all. Thus it is argued that by this
statute mandatory obligation is substituted for freedom of
contract, which is just that against which the Fourteenth
Amendment was intended to secure persons. We agree
that this legislation approaches closely the limit of legis-
lative power, but not that it transcends it. The statute
treats the business of hail insurance as affected with a
public interest. In that country, where a farmer's whole
crop, the work and product of a year, may be wiped out
in a few minutes, and where the recurrence of such mani-
festations of nature is not infrequent, and no care can
provide against their destructive character, it is of much
public moment that agencies like insurance companies to
distribute the loss over the entire community should be
regulated so as to be effective for the purpose. The dan-
ger and loss to be mitigated are possible for a short period.
The storms are usually fitful and may cover a compara-
tively small territory at a time, so that, of two neighbors,
one may have a total loss and the other may escape alto-
gether. The risk justifies a high rate of insurance. It
differs so much in these and other respects from other
insurance that it may properly call for special legislative
treatment. The statute applies to all companies engaged

in such insurance. There is no discrimination and no denial of the equal protection of the laws. The fact that the time requirements of the statute may bear more heavily on foreign companies whose principal offices may be far removed than upon those whose headquarters are within the State is a circumstance necessarily incident to their conduct of business in another State of which they can not complain. They can not expect the laws of the State to be bent to accommodate them as a matter of strict legal right, however wise it may be for a legislature to give weight to such a consideration in securing the use of foreign capital for its people. Moreover, as the business of such insurance companies is purely intrastate, *New York Life Insurance Co.* v. *Deer Lodge County,* 231 U. S. 495, the State has power to require them to accept conditions different from those imposed on domestic corporations (*Paul* v. *Virginia,* 8 Wall. 168; *Hooper* v. *California,* 155 U. S. 648, and cases cited) though this is not, of course, unlimited. *Terral* v. *Burke Construction Co.,* 257 U. S. 529, 532, 533.

The legislature was evidently convinced that it would help the public interest if farmers could be induced generally to take out hail insurance and " temper the wind " so injurious to the agriculture of the State, and that they would be more likely to avail themselves of this protection if they could effect the insurance promptly and on the eve of the danger. The legislature said, therefore, to companies intending to engage in hail insurance, " To accomplish our purpose we forbid you to engage in this kind of business unless you agree to close your contracts within twenty-four hours after application is made. You must so extend the scope of the authority of your local agents, or must so speed communication between them and your representatives who have authority, as to enable an applicant to know within the limits of a day whether he is protected, so that, if not, he may at once go to

another company to secure what he seeks. If, therefore, you engage in this exigent business, and allow an application to pend more than twenty-four hours, you will be held to have made the contract of insurance for which the farmer has applied."

This does not force a contract on the company. It need not accept an application at all or it can make its arrangements to reject one within twenty-four hours. It is urged that no company, to be safe and to make the business reasonably profitable, can afford to place more than a certain number of risks within a particular section or township, and that what is called " mapping " must be done to prevent too many risks in one locality and to distribute them so that the company may not suffer too heavily from the same storm. Applications are often received by agents in different towns for the crops in the same section or township, so that, if local agents were given authority finally to accept applications, this " mapping," essential to the security of the company in doing the business at all, would be impossible. It seems to us that this is a difficulty easily overcome by appointing agents with larger territorial authority and sub-agents near them, or by the greater use of the telegraph or telephone in consulting the home office or more trusted local agencies. While the time allowed is short, we can not say that it is unreasonable in view of the legitimate purpose of the legislation and the possibilities of modern business methods.

There is nothing in the statute under discussion which requires a company to receive applications or prevents it from insisting on the payment of a premium in advance before receiving them, or from reserving the usual right on the part of the insurer at any time to cancel the contract of insurance on service of due notice with a return of a proper proportion of the premium. Not infrequently companies in their own interest in some kinds of insurance, entrust to local insurance agents authority to bind

their principals temporarily until the application can be examined and approved by the head office. The statute here in question has been in force since 1913, and it does not seem to have driven companies out of the hail insurance business, an indication that they are able profitably and safely to adjust themselves and their methods to its requirements. Whether it is wise legislation is not for us to consider. All we have to decide, and that we do decide, is that it is not so arbitrary or unreasonable as to deprive those whom it affects of their property or liberty without due process of law.

It is pointed out on behalf of the company that the very application which the defendant in error signed contained an express consent that the policy should not take effect until the company's agency at Waseca, Minnesota, should have an opportunity to examine it and should accept it. It is clear that if the statute is valid such a consent is void because it defeats the very object of the statute. This is settled by *Whitfield* v. *Aetna Life Insurance Co.,* 205 U. S. 489, and *Orient Insurance Co.* v. *Daggs,* 172 U. S. 557, already cited.

The judgment of the Supreme Court of North Dakota is

*Affirmed.*