Ronald I. Rosenstein, Norristown, Pa., for plaintiffs.

Edwin F. McCoy, Philadelphia, Pa., for defendant.

**Eli L. MEDUNIC and Dolores M. Medunic**

v.

**Louis W. LEDERER.**

Civ. A. No. 74–1002.

United States District Court, E. D. Pennsylvania.

Oct. 4, 1974.

### MEMORANDUM

GORBEY, District Judge.

The defendant has filed a motion asking for relief from the consequences of having failed to plead or respond to a complaint as provided by the Federal Rules of Civil Procedure.

A chronology of events follows. The complaint, arising out of an automobile accident, was filed April 18, 1974, and was served on the defendant on May 2, 1974. The complaint was endorsed with notice to plead within twenty (20) days.

On June 4, 1974, plaintiff filed a praecipe for judgment requesting the Clerk to enter a default judgment in favor of the plaintiff pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.[1] Notice that the case would be scheduled for a pretrial conference was sent to the defendant by this court on June 11, 1974. On June 18, 1974, the defendant was notified that the case would be called for trial on Monday, July 11, 1974, at 10:00 A.M. in courtroom no. 2 as per letter from the Deputy Clerk, Marguerite L. McCaffrey. On July 8, 1974, Edwin F. McCoy, Esquire, a very dedicated and highly competent attorney, appeared at the chambers of the court to request a continuance which was denied, and the case proceeded to trial without a jury on the issue of assessment of damages. On the same date Mr. McCoy filed a motion to set aside the entry of default and default judgment; he was also granted the opportunity to file a supplemental memorandum in support of his motion. A supplemental memorandum and accompanying affidavit of the regional claims attorney for the Nationwide Insurance Company were filed on September 11, 1974, and on September 24, 1974, plaintiff filed an answer and memorandum contra the petition to set aside the default. As shown by defendant's memorandum of law and supporting affidavit, upon receipt of the summons and complaint on May 2, 1974, the defendant took the same to his insurance agent, who forwarded same to defendant's insurer, the Nationwide Insurance Company's Harrison, New York, legal office. In the meantime, plaintiff had instituted in Montgomery County, Pennsylvania, another suit[2] against Nationwide Insurance Company, by coincidence his own automobile insurance carrier, on a cause of action arising out of the same accident. This suit was being handled by the Harrison, New York office, which assumed that the pleading related to the Montgomery case. Defendant claims that due to the confusion and great activity in the New York office, the summons and complaint were misplaced, mislaid and ignored for an excessive period of time. Apparently also ignored for the same reason were the June 11, 1974, notice of a pretrial conference and the June 18, 1974, notice that the case would be called for trial on Monday, July 8, 1974.

The resolution of the issue is not an easy one, involving as it does, a choice between two conflicting policies, prompt and efficient handling of litigation in the Federal Courts by reasonably strict application of the Rules of Procedure on the one hand and that the interests of justice are normally best served by trial on the merits, on the other.

History has a way of repeating itself but it seems to be a human characteristic not to draw correctly therefrom, the implications of past events and from them to make prudent adjustments in order to avoid injurious consequences. This is true not only as far as law and lawyers are concerned, but also as respects other individuals and business enterprises whose conduct, in their own interest, must be molded in accordance with a continually developing jurisprudence.

In ancient times among significant events which needed interpretation were the dreams of individuals who while regarding them as significant were unable to interpret them. We are all familiar with the Biblical story[3] of Pharaoh's dream, which being interpreted by Joseph forecast unpleasant consequences[4] unless appropriate action be taken.

---

1. Ancient authority in support of the Federal Rules of Civil Procedure may be found in 1 Corinthians 40. "Let all things be done decently and in order."

2. Medunic v. Nationwide Insurance Company and Joseph Hawley, No. 74–5893.

3. 41 Gen. verses 1–37.

4. But not as unpleasant, however, as the interpretation to King Belshazzar of the "handwriting on the wall" as recorded in 5 Daniel.

Other significant events which also required interpretation were the dreams of Nebuchadnezzar, documented and interpreted in the Book of Daniel; the "handwriting on the wall" interpreted for King Belshazzar.

From out of the ancient past we now merge into the present, where, in a quite fortuitous manner, this court finds itself in the position of a modern day Joseph [5] called upon to interpret certain written words, not the words of a dream, but printed words, the "handwriting on the wall" so to speak, found in the books of law, a very significant example of which are the following words taken from Balk v. Ford Motor Co., 446 Pa. 137 at 143, 285 A.2d 128 at 132 (1971):

> "By our decision today [that the lower court did not abuse its discretion in opening the judgment] we do not intend to reward an insurance company for admittedly negligent conduct. When the burdens of making a profit become too heavy, as they apparently did here, strong arguments favor holding an enterprise accountable as a cost of its doing business."

An aid to the interpretation of those [prophetic] words and the consequences which follow are a number of leading cases. In Robinson v. Bantam Books, Inc., (S.D.N.Y.1970) 49 F.R.D. 139, 141–142, 14 F.R.Serv.2d 284, 286, factual situation is quite similar to the present one. In denying a motion to reopen the judgment, the court in an opinion with which this court is in accord stated:

> "It seems that defendants want to be excused for not filing their answer within 20 days of service, Fed.R.Civ. P. 12(a), on the ground that the New

York City branch of Bantam's insurer simply did not receive the summons and complaint until after the deadline. Counsel is asking this court, in effect, to establish the proposition that the inter-office confusion resulting from multi-office corporate enterprises, plus the added confusion resulting from inter-corporate agreements, should automatically excuse failure to meet the time requirements of the Federal Rules of Civil Procedure. The court holds that there is little or no merit to defendants' attempt to make the rules read: defendants shall have 20 days from the time summons and complaint filters back to the lawyer in charge of litigation for the district in which the case is filed. *See,* *e. g.,* Nelson v. Coleman Co., 41 F.R.D. 7 (D.S.C.1966) (delay of home office in returning complaint to the proper district was not excusable neglect). The fact that, before the 20 day deadline expired, no person in any of the offices through which this summons and complaint passed was willing to take responsibility for the timely filing of the answer is not to be condoned." [6]

*See also* Wagg v. Hall, (E.D.Pa.1967) 11 F.R.Serv.2d 55 c. 1, case 2, 42 F.R. D. 589.

The dissenting opinion in Fox v. Mellon, 438 Pa. 364, 264 A.2d 632 (1970) with which this court is in complete agreement, is likewise informative when considered along with the facts of the case *sub judice.*

■ Since no judgment for plaintiff has yet been entered,[7] the original petition of defendant is to be regarded as a

---

5. With no claim, however, to omniscience and bowing as we must to a higher authority, *i. e.,* the Court of Appeals for the Third Circuit. "For we know in part, and we prophesy in part." 1 Corinthians 9.

6. "For whatsoever things were written aforetime were written for our own learning, . . ." 15 Romans 4. "And some believed

the things which were spoken [written] and some believed not." 28 The Acts 24.

7. As pointed out by defendant's counsel in his further memorandum of law, filed on September 25, 1974, docket entry # 7, no default *judgment* can be entered by the Clerk under Rule 55(b)(1). Where, as here, the claim is for unliquidated damages, the court only can enter a default judgment.

petition to set aside the default entered by the Clerk.

Rule 55(c) of the Federal Rules of Civil Procedure is pertinent, and states that for good cause shown the court may set aside an entry of default. In determining what is good cause, reference is generally made to Rule 60(b) which relates to the opening of a default judgment on the grounds of *inter alia*: mistake, inadvertence, surprise, or excusable neglect.

Considering the relationship of an insurer to its insured, it seems not unreasonable to conclude that the claims department of a very large insurer should be sufficiently inventive to be capable of establishing a procedure by which it could discharge its obligation in the manner and the extent to which an attorney is expected by the courts to discharge his obligation to his client. The relationship of the insurer and the insured in this modern time should be considered much as it is with regard to the liability of the insurer's obligation once it has undertaken the defense of a suit. The courts have expressed it in terms of the obligation to exercise good faith, and to act with reasonable diligence and caution. In discussing this, a leading authority in Insurance states:

"To my thinking, these rules import but do not clearly state the responsibility evolving upon the insurer under modern conditions. It has more than a duty of the care of an ordinary man unskilled in litigation; it must exercise more than mere good faith. It is a professional which advertises by all media of mass communication its skill in the investigation, settlement, and litigation of liability cases. It asks the individual, who is an amateur in these matters but who would be deeply concerned over a case in which he is personally interested, to substitute its skill for his, its judgment for his judgment, and its conduct for his own acts. It then becomes chargeable with a greater duty—even as the brain surgeon must exercise greater knowledge, judgment, and skill in a brain operation than would a general practitioner of medicine. It must use skill diligently and adequately to investigate a case, it must use skill in negotiation, it must select skilled trial counsel—not the lowest priced member of the bar—and that individual so selected by it, may bind the insurer by his derelictions. It is not a comfortable spot for a liability insurer to occupy, but it seeks the business upon the basis of its skill. Even as an attorney, abstractor, accountant, or physician may be liable if he fails to use the degree of skill in the handling of a professional matter which one is entitled to expect of one possessing like training and abilities, so must the insurer accept legal duties commensurate with its responsibilities."

Volume 7A, Appleman, Insurance Law and Practice, § 4687, PPS 479–480. Of course, all that becomes meaningless if the insurer is not accountable for gross negligence in permitting a default or default judgment to be filed against its insured.

■ To characterize the conduct of the insurer in this case as "excusable" negligence or inadvertence, when similar conduct by an attorney would subject him to a malpractice action, would be unreasonable and unrealistic. On the contrary it should be regarded as conclusive evidence of incompetence, which reduced to some kind of negligence, justifies the use of the adjective "gross", or "inexcusable".

If it be insisted that compliance with the Federal Rules is impossible or impracticable in view of the fact that, according to defendant's memorandum of law and accompanying affidavit, in support of the motion to set aside the default, Nationwide, the insurer, out of its Harrison branch office in New York, had 3,274 pending law suits and opened 140 new ones and handled 2,100 pieces of correspondence, the response must be that while such statistics are indeed impressive (to show the extensive volume

of business in a single office of a very successful insurer) they are not a justification for imposing upon the plaintiffs the costs and inconvenience of another trial. The solution to the problem is suggested by National Union Fire Ins. Co. v. Wanberg, 260 U.S. 71, 43 S.Ct. 32, 67 L.Ed. 136 (1922), affirming, 46 N.D. 369, 179 N.W. 666 (Comp.Laws N.D. 1913, § 4902) which dealt with the constitutionality of a state statute which provided that hail insurance shall take effect 24 hours after the application is taken by an authorized local agent, and that if the company declines to write the insurance it must notify the applicant and agent by telegram prior to the expiration of the 24 hour period.

The insurer's claim of discrimination and denial of equal protection of the laws was met by the court's statement:

"The fact that the time requirements of the statute may bear more heavily on foreign companies whose principal offices may be far removed than upon those whose headquarters are within the state is a circumstance necessarily incident to their conduct of business in another state of which they cannot complain. They cannot expect the laws of the state to be bent to accommodate them as a matter of strict legal right, however wise it may be for a Legislature to give weight to such a consideration in securing the use of foreign capital for its people."

*Supra* at page 75 of 260 U.S., at page 33 of 43 S.Ct.

Also, the court wrote:

"You must so extend the scope of the authority of your local agents,[8] or must so speed communication between them and your representatives who have authority, as to enable an applicant to know within the limits of a *day* whether he is protected, so that, if not, he may at once go to another company to secure what he seeks. If, therefore, you engage in this exigent business, and allow an application to pend more than 24 hours, you will be held to have made the contract of insurance for which the farmer has applied."

*Supra,* pages 75–76 of 260 U.S., page 34 of 43 S.Ct.

In the case *sub judice* we are talking not about one day, but about twenty days under the Federal Rules of Civil Procedure.

With this background, what may loosely be called the "handwriting on the wall" as taken from the Pennsylvania case Balk v. Ford Motor Co., *supra,* is interpreted as a prophesy that some insurers in Pennsylvania will have trouble unless they mend their ways, and the dire result that flows from such prophesy is that defendant's motion to set aside the default and to grant a new trial must be and is hereby denied. The parties have until November 1, 1974, to submit proposed findings of fact and conclusions of law on the issue of damages.

---

8. In the present situation the appropriate words would be "local counsel".