Slip Op. 03 - 130

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

| | |
|---|---|
| OKAYA (USA), INC. | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : **Before: MUSGRAVE, JUDGE** |
| | : |
| UNITED STATES | : Court No. 02-00642 |
| | : |
| Defendant. | : |
| | : |

[On the matter of liquidation instructions from U.S. Department of Commerce to former U.S. Customs Service allegedly divergent from final changed circumstances and partial revocation of antidumping order results, plaintiff's motion for judgment denied, defendant's motion to dismiss counts I and II of the complaint and cross-motion for judgment on the agency record granted.]

Decided: October 3, 2003

*Willkie Farr & Gallagher LLP*, Washington D.C. (*Matthew R. Nicely*, *Carrie L. Owens*), for the plaintiff.

*Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, *Patricia M. McCarthy*, Assistant Director, Civil Division, Commercial Litigation Branch, United States Department of Justice, (*Ada E. Bosque*); Office of Chief Counsel for Import Administration, U.S. Department of Commerce (*Amanda Blaurock*), of counsel, for the defendant.

## OPINION

Plaintiff Okaya (USA) Inc. ("Okaya") moves for judgment by default or on the merits of a

three-count complaint alleging that liquidation instructions from the U.S. Department of Commerce

("Commerce") to the U.S. Customs Service[1] ("Customs") regarding partial revocation of the

---

[1] Renamed, effective March 1, 2003, the U.S. Bureau of Customs and Border Protection per that Homeland Security Act of 2002, Pub. L. 107-296 § 1502, 116 Stat. 2135, 2308-09 (Nov. 25, 2002) and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108-32 at 4 (2003).

antidumping duty order on certain tin mill products from Japan were not in accordance with the underlying changed circumstances determination. The government moves to dismiss counts I and II of the complaint and for judgment on the administrative record. For the following reasons, the Court grants the government's motions and denies the plaintiff's.

### Background

The United States has a "retrospective" assessment system for antidumping and countervailing duties: final liability is determined after merchandise is imported. *See* 19 C.F.R. §§ 351.212(a), 351.213(a). During the anniversary month of publication of the antidumping duty order an affected producer, exporter or importer may request an "administrative" review for assessment of duties on its subject merchandise entered during the relevant "period of review." 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.213(b)(3). The period of review is typically the 12-month period beginning on the anniversary of the date of publication of the order.[2] *See* 19 U.S.C. § 1675(a)(1);

---

[2] Under prior law, Commerce generally administered each required automatic review as including the one-year period preceding and the one-year period succeeding the date of review. *See American Spring Wire Corp. v. United States*, 7 CIT 2, 4-5, 578 F.Supp. 1405, 1407 (1984). *Cf.* 19 U.S.C. § 1675(a)(1) (1982). Congressional amendment was "designed to limit the number of reviews in cases in which there is little or no interest, thus limiting the burden on petitioners and respondents, as well as the administering authority." H.R. Rep. No. 98-1156, 98th Cong., 2d Sess. at 181 (1984), reprinted in 1984 *U.S.C.C.A.N.* 5220, 5298. *Cf.* Trade Agreements Act of 1979, Pub. L. No. 96-39, § 101, 93 Stat. 175 (1979) *with* Uruguay Round Agreements Act, Pub. L. No. 98-573, § 611(a)(2)(A), 98 Stat. 2948, 3031 (1984). However, it resulted in no change to the singular nature of each "period of review," and Commerce continues to administer multiple administrative reviews in a single proceeding when efficient to do so. *See, e.g.*, *Final Results of Antidumping Duty Administrative Review; Spun Acrylic Yarn From Italy*, 55 Fed. Reg. 18925 (May 7, 1990); *Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review and Determination Not To Revoke in Part*, 54 Fed. Reg. 35517 (Aug. 28, 1989); *Drycleaning Machinery From West Germany; Final Results of Administrative Review of Antidumping Finding*, 50 Fed. Reg. 32154 (Aug. 8, 1985). *Cf. Rubberflex Sdn. Bhd. v. United States*, 23 CIT 461, 472, 59

(continued...)

19 C.F.R. § 351.213(e)(1)(i). The rate determined at such review becomes the cash deposit rate for future entries. 19 U.S.C. § 1675(a)(2)(C). If Commerce does not receive a timely review request, or if it receives a timely request for less than all of the entries during the review period, then without further notice it will issue automatic liquidation instructions to Customs for assessment of antidumping duties on non-reviewed entries at rates equal to the cash deposit of or bond for estimated antidumping or countervailing duties required at the time of entry or withdrawal from warehouse for consumption. 19 C.F.R. §§ 351.212(c)(1)&(2).

An interested party may also request a determination on whether revocation of the antidumping order in whole or in part is warranted via a "changed circumstances" review. 19 C.F.R. § 351.216(b). *See* 19 U.S.C. § 1675(d)(1). The request may be made at any time, however a showing of "good cause" is required if the request is made prior to the second anniversary of publication of the order. *Id*. & § 351.216(c). If a changed circumstances or administrative review is initiated, then liquidation of the affected entries is suspended until Commerce publishes final review results. *See, e.g.*, *Wirth Ltd. v. United States*, 22 CIT 285, 288, 5 F.Supp.2d 968, 972 (1998); *American Permac, Inc. v. United States*, 16 CIT 672, 800 F.Supp. 952 (1992). *See also* 19 U.S.C. § 1675(a)(1). Reviews are conducted in accordance with the procedures outlined at 19 C.F.R.§

---

[2] (...continued)
F.Supp.2d 1338, 1348 (1999) (observing that "each administrative review is a separate proceeding"). On the other hand, it is also remains true that Commerce interprets the period of review flexibly to include more or less than twelve months as circumstances require. *See, e.g.*, *Stainless Steel Sheet and Strip in Coils From Italy: Final Results of Antidumping Duty Administrative Review*, 67 Fed. Reg. 1715 (Jan. 14, 2002) (amended, 68 Fed. Reg. 11521 (Mar. 11, 2003)); *Aramid Fiber Formed of Poly Para-Phenylene Terephthalamide from the Netherlands; Final Results of Antidumping Administrative Review*, 61 Fed. Reg. 51406 (Oct. 2, 1996); *Polyethylene Terephthalate Film, Sheet, and Strip from Japan; Final Results of Antidumping Duty Administrative Review*, 60 Fed. Reg. 32133 (June 20, 1995).

351.221 governing, *inter alia*, notice, comment, verification, and publication of review results. If Commerce finds changed circumstances sufficient to justify revocation, the effective date of revocation is within Commerce's discretion. *See* 19 U.S.C. § 1675(d)(3). Suspension of liquidation pending review is considered removed upon publication of the final results in the federal register. *See*, *e.g.*, *Fujitsu General America, Inc. v. United States*, 110 F.Supp.2d 1061, 1077 (2000), *aff'd* 283 F.3d 1364, 1380 (Fed. Cir. 2002); *International Trading Co. v. United States*, 110 F.Supp.2d 977, 986 (2002), *aff'd* 281 F.3d 1286 (Fed. Cir. 2002). *See also* 19 C.F.R. § 351.222(g)(4) (when Commerce revokes an order either in whole or in part based upon changed circumstances, it "will order the suspension of liquidation ended on the effective date of the notice of revocation").

On December 3, 2001, approximately fifteen months after Commerce imposed *Certain Tin Mill Products From Japan: Notice of Antidumping Duty Order*, 65 Fed. Reg. 52067 (Aug. 28, 2000), Okaya requested revocation in part with respect to a particular type of steel[3] pursuant to changed circumstances in accordance with 19 U.S.C. § 1675(d)(1). *See* PDoc 1.[4] Since the request was made prior to the second anniversary of the order, in accordance with 19 C.F.R. § 351.216 Okaya argued that "good cause" existed for revocation. Okaya also requested expedited review and retroactive revocation. No other administrative review had been requested or initiated at the time.

Commerce published notice of the request on January 25, 2002. *See Certain Tin Mill Products From Japan: Notice of Initiation of Changed Circumstances Review of Antidumping Duty*

---

[3] Specifically, "steel coated with metallic chromium layer between 100-200 mg/m2 and a chromium oxide layer between 5-30 mg/m2; chemical composition of 0.05% maximum carbon, 0.03% maximum silicon; 0.60% maximum manganese, 0.02% maximum sulfur; maximum flux density of 10kg minimum and a coercive force of 3.8 ore minimum." 67 Fed. Reg. at 3686.

[4] References to the public administrative record herein abbreviated "PDoc."

*Order*, 67 Fed. Reg. 3686 (Jan. 25, 2002). The notice acknowledged the request for "partial revocation . . . retroactively for all unliquidated entries" and the fact that no domestic producer expressed opposition. *Id*. at 3686, 3688. On March 8, 2002, Commerce issued *Certain Tin Mill Products From Japan: Preliminary Results of Changed Circumstances Review*, 67 Fed. Reg. 10667 (Mar. 8, 2002) announcing its preliminary decision to "revoke this order, in part, with respect to future entries of certain tin-free steel . . . based on the fact that domestic interested parties have expressed no interest in the continuation of [that part of] the order[.]"[5] *Id*. The preliminary results did not state an "effective date" for revocation, only that the effective date of the order was March 8, 2002. *Id*. The established estimated antidumping duties cash deposit rate remained in effect pending the final results. *See id.*

Because the preliminary results reflected revocation only as to prospective entry, on March 22, 2002, Okaya requested a meeting with Commerce. During the meeting and in its case brief, Okaya emphasized that 19 C.F.R. § 351,222(g)(4) clearly states that if Commerce's "Secretary revokes an order, in whole or in part, . . . the Secretary . . . *will* instruct the Customs Service to release *any* cash deposit or bond[.]"[6] Okaya also argued that there were "myriad" examples of the administrative practice of retroactive revocation which refunded "with interest any estimated antidumping duties collected for all unliquidated entries entered or withdrawn from warehouses on

---

[5] As part of its request, Okaya submitted evidence that all known U.S. tin producers were not or were uninterested in producing this product. *See* PDoc 1 at 5, Att. C (Dec. 3, 2001).

[6] *See* PDoc 10 ("Okaya Case Br.") at 4 (Okaya's emphasis) & PDoc 13 (Memo from Analyst/IA Re: Meeting with Wilkie Farr dated Apr. 12, 2002).

or after the date of the original order.[7]  In short, Okaya argued that refund of deposits on "all unliquidated entries" is "both *required* by the regulations and is standard practice."[8]  On July 1, 2002, Commerce published its final ruling, the relevant portions of which read:

> . . . On December 3, 2001, Okaya . . . requested that the Department revoke in part the antidumping duty order on certain tin mill products from Japan.  Okaya also requested that the partial revocation apply retroactively for all unliquidated entries.
>
> * * *
>
> No domestic producers of tin mill products have expressed opposition to the partial revocation of the tin mill products order following the Initiation Notice and the Preliminary Results. For these reasons the Department is partially revoking the order on tin mill products from Japan, effective August 1, 2001, with respect to all unliquidated entries for consumption of tin-free steel which meets the specifications detailed above . . . .  We will instruct [Customs] . . . to liquidate without regard to antidumping duties, as applicable, and to refund any estimated antidumping duties collected for all unliquidated entries of certain tin mill products (i.e., certain tin-free steel) meeting the specifications indicated above.

*Certain Tin Mill Products From Japan: Final Results of Changed Circumstances Review*, 67 Fed. Reg. 44177, 44177, 44179, PDoc 16 (July 1, 2002).

---

[7] Okaya Case Br. at 4 & n.8, referencing the following final results of changed circumstances reviews: *Vector Supercomputers From Japan*, 66 Fed. Reg. 22213 (May 3, 2001); *Certain Hot-Rolled Lead and Bismuth Carbon Steel Products from the United Kingdom*, 65 Fed. Reg. 13713 (Mar. 14, 2000); *Certain Fresh Cut Flowers from Ecuador*, 64 Fed. Reg. 56327, 56328 (Oct. 19, 1999); *Stainless Steel Hollow Products from Sweden*, 60 Fed. Reg. 42529 (Aug. 16, 1995); *Roller Chain, Other then Bicycle from Japan*, 64 Fed. Reg. 66889 (Nov. 30, 1999); *Fresh Kiwifruit from New Zealand*, 64 Fed. Reg. 50486 (Sep. 17, 1999); *Replacement Parts for Self-Propelled Bituminous Paving Equipment from Canada*, 60 Fed. Reg. 48691 (Sep. 20, 2000).

[8] *Id*. at 5 & n.10 (Okaya's emphasis), referencing *Certain Corrosion-Resistant Carbon Steel Flat Products From Japan*, 67 Fed. Reg. 7356, 7357 (Feb. 19, 2002), which Okaya characterized as "retroactively refunding duties for *all unliquidated entries* without mention of a specific time period" (Okaya's emphasis).

On July 31, 2002, automatic liquidation instructions issued to Customs from Commerce bearing boilerplate wording which explained that Commerce does not automatically conduct administrative reviews of antidumping duty orders, that such reviews must be requested in accordance with 19 C.F.R. § 351.213, and that since Commerce had not received a request for an administrative review of the antidumping duty order for the period "04/12/2000 – 07/31/2001" on the merchandise listed on the instructions, Customs was instructed to assess antidumping duties on merchandise entered or withdrawn from warehouse for consumption at the cash deposit or bonding rate in effect on the date of entry. Msg. No. 2256202 (July 31, 2002).

Thereafter, on September 16, 2002, beyond the statute of limitations for challenging the final results, Customs posted the following revocation instructions from Commerce, dated September 13, 2002, on its electronic bulletin board:

> Customs is directed to terminate the suspension of liquidation for all shipments of certain tin-free steel entered, or withdrawn for consumption from warehouse, for consumption on or after 08/01/2001. All entries of certain tin-free steel that were suspended on or after 08/01/2001 should be liquidated without regard to antidumping duties (*i.e.*, release all bonds and refund all cash deposits).

*Instructions to Customs Re: Revocation of Dumping Order in Part on Tin-Free Steel from Japan*, Msg. No. 2256202 (Sep. 13, 2002).

On October 8, 2002, Okaya filed a summons and a three-count complaint asserting jurisdiction under 28 U.S.C. § 1581(i). Count I alleges that "Commerce did not properly explain the basis for its revocation instructions to treat entries before August 1, 2001 differently from those that entered on or after that date" and that therefore Commerce's instructions "were arbitrary, capricious, an abuse of discretion, and were otherwise not in accordance with law." Compl. ¶ 9. Count II

alleges that "Commerce's decision to treat identical products differently based solely upon the entry date is neither supported by any evidence on the record nor Commerce's prior practice" and that the decision was therefore " arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." *Id*. ¶ 10. Count III alleges that "Commerce's instructions to implement revocation procedures are inconsistent with the plain language of its final results in the changed circumstances review" and that they were therefore "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." *Id*. ¶ 11.

On December 16, 2002, the government filed a motion to dismiss counts I and II of the complaint for lack of subject matter jurisdiction under 28 U.S.C. § 1581(i) and it submitted a proposed order for Okaya to file an amended complaint within 30 days, to which the government would then respond after 30 more days. The motion was filed untimely.[9] However, subject matter

---

[9] CIT Rules 12(a)(1)(A) and 6(a) allow the government 60 days to respond to a complaint unless the response would be due on a Saturday, Sunday, or legal holiday, in which event the response is due on the next day which is not such a day. CIT Rule 6(a) states that "the day of the act, event, or default from which the designated period of time begins to run shall not be included" in the computation of the period allowed for a responsive pleading. When service upon a party is by mail, CIT Rule 6(c) adds five days "to the prescribed or allowed period[.]" In this matter, the summons and complaint were served upon the government on October 8, 2002 by mailing in accordance with CIT Rule 4(i). *See* Exhibits to Def.'s Opposition to Pl.'s Mot for Default Judgment (*sic* – such a motion had not been filed at the time). The 60th day from that date was Saturday, December 7, 2002. The government contended that in accordance with CIT Rule 6(a), the "prescribed or allowed period" for a responsive pleading, assuming hand-delivery of service, was Monday, December 9, 2002. Including the five-day period for mailing, the fifth day from and excluding December 9, 2002, was December 14, 2002, another Saturday, and therefore the government argued that a responsive pleading was due Monday, December 16, 2002, the date it filed its motion to dismiss counts I and II of the complaint. However, the government's interpretation is incorrect and is at odds with the fact of service in this matter. The Court's Rules contemplate that the period allowed for mailing is to be added directly to the original "prescribed or allowed period" and the total is treated as a single period for purposes of computation. Mailing is not treated as a separate, additional period. *Cf.* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 4B *Federal*

(continued...)

jurisdiction may be challenged at any time, since a court has a duty to determine whether it has

jurisdiction over matters presented for disposition.[10]

"Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection

of § 1581 is or could have been available, unless the remedy provided under that other subsection

would be manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987).

*See also JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000); *Norcal/Crosetti Foods,*

*Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992).  The government argued that counts I and

II in reality sought to contest the "rejection" of Okaya's request for retroactive application of partial

revocation and that such a claim is time-barred because Okaya failed to initiate suit within 30 days

---

[9] (...continued)
*Practice & Procedure* § 1171 (3d ed. 1998) ("Service by Mail," *et cetera*) (interpreting Federal Rule of Civil Procedure ("F.R.C.P.") 6(e)).  In other words, the government's responsive pleading was due sixty-five days from October 8, 2002, the date of mailing of the summons and complaint, *i.e.*, by Thursday, December 12, 2002.

[10] *See*, *e.g.*,  *Renesas Technology America Inc. v. United States*, Slip Op. 03-106 (CIT Aug. 18, 2003); *Shinyei Corp. of America v. United States*, Slip Op. 03-19 (CIT Feb. 14, 2003). Generally, a pleading's allegations of jurisdiction are taken as true unless denied or controverted by the movant. A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction serves one of two purposes: either it challenges the sufficiency of the pleading under Rule 8, or it presents a defense by way of abatement.  On such a motion, the moving party challenges either the sufficiency of the pleadings or the factual basis underlying the pleadings.  In the first instance, all facts alleged in the non-moving party's pleadings are accepted as true.  If the 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction, in which instance only uncontroverted facts are accepted as true, and the remaining facts are subject to fact-finding by the Court.  By contrast, a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2), and the only information necessary for a decision on the motion is to be found in the pleading itself; if outside evidence is considered, the motion is converted into one for summary judgment.  *See generally* 5A Wright *et alia*, *Federal Practice & Procedure* § 1363. *See*, *e.g.*, *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991); *Kemet Electronics Corp. v. Barshefsky*, 21 CIT 912, 929, 976 F.Supp. 1012, 1027 (1997).

of publication. *See* 19 U.S.C. § 1516a(a)(2); 28 U.S.C. § 1581(c). The government contended that if Okaya believed the final results to be ambiguous, then it should have challenged that ambiguity pursuant to 28 U.S.C. § 1581(c).

Okaya bore the burden of proving its jurisdictional allegations. *Gibbs v. Buck*, 307 U.S. 66 (1939). *See*, *e.g.*, *MBL (USA) Corp. v. United States*, 14 CIT 161, 164, 733 F.Supp. 379, 382 (1990); *Smith Corona Group, SCM Corp. v. United States*, 8 CIT 100, 102, 593 F.Supp. 414, 417 (1984). Okaya contended that its complaint contested only the alleged divergence in the liquidation instructions from the final results that resulted from Commerce's decision, without explanation, to treat entries differently depending upon their entry date; therefore, Okaya argued, section 1581(i) jurisdiction is appropriate to contest such divergence on the authority of *Consolidated Bearings Co v. United States*, 25 CIT ___, 166 F.Supp.2d 580 (2001) and *Heveafil Sdn. Bhd. v. United States*, 23 CIT 447 (1999).[11] Pl.'s Opp. to Mot. to Dismiss at 5-9. Okaya further explained that at the time the final results were issued, it understood Commerce to grant revocation as to "all" entries that were unliquidated as of the effective date of revocation, as it had requested, and that it was not until the liquidation instructions were posted on Customs' web site, beyond the statute of limitations for challenging the final changed circumstances determination, *see* 28 U.S.C. § 1581(c), that Okaya

---

[11] *Heveafil* instructs that the Court's residual jurisdiction is appropriate when reviewing Commerce's instructions to Customs because "Commerce, not Customs, is the agency responsible for issuing instructions and determining the amount of antidumping duty to be assessed." 23 CIT at 449. *See also id.* at 450 (the Court "reviews Commerce's liquidation instructions . . . and will find them unlawful if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'") (quoting Administrative Procedure Act ("APA") in part, 5 U.S.C. § 706(2)(A)). *Consolidated Bearings* instructs that liquidation instructions are not reviewable under 28 U.S.C. § 1581(c), since they are not part of the final results, and will be considered arbitrary and capricious if they diverge from the final results and Commerce fails to explain their basis. Under such circumstances, subsection (i) provides the appropriate basis for review. 166 F.Supp.2d at 583.

realized Commerce had issued an interpretation that differed from what Okaya considered to be the "proper" interpretation of the final results.

The parties' arguments implicated the factual basis of Okaya's jurisdictional allegations, *i.e.*, the proper interpretation of the final results. Since Okaya's jurisdictional allegations depend upon the correctness of its interpretation of the final results, and since the government's motion to dismiss depends upon the reasonableness of Okaya's interpretation, the Court determined that the jurisdictional allegations are intertwined with the merits and that it was appropriate to reserve decision until final disposition. *See Renesas Technology*, *supra*; *Nissei Sangyo America v. United States*, Slip Op. 03-105 (CIT Aug. 18, 2003); *Takashima U.S.A., Inc. v. United States*, 19 CIT 673, 886 F.Supp. 858 (1995); *PPG Industries Inc. v. United States*, 84 Cust. Ct. 256 (1980). *Cf. Martin By Martin v. Secretary of Health and Human Services*, 62 F.3d 1403, 1406 (Fed. Cir. 1995) ("the distinction between facts necessary to establish jurisdiction and those necessary to prove a claim is often a close one, carrying significant legal consequences").

On the other hand, the government's untimely motion presented a jurisdictional challenge only to a part of the complaint. The government agreed, on the authority of *Heveafil*, that the allegations of count III appeared sufficient to confer subsection (i) jurisdiction, since the claim alleges that the liquidation instructions were inconsistent with the final results. *See* Def.'s Mot. to Dismiss In Part at 7. Although subject matter jurisdiction may neither be waived nor agreed among the parties, the Court concurred that count III sounded in 1581(i) jurisdiction. Since the government had not provided timely substantive responses to any part of the complaint nor timely moved for an extension of time to answer the complaint, Okaya moved for entry of default and for leave to file a

motion for default judgment. The government opposed Okaya's motion for entry of default on the ground that the motion to dismiss had not been untimely. The Court concluded that the motion to dismiss in part did not alter the time within which to answer the remainder of the complaint not addressed by such motion. *See Gerlach v. Michigan Bell Tel. Co.*, 448 F.Supp. 1168, 1174 (D.C. Mich. 1978) ("separate counts are, by definition, independent bases for a lawsuit and the parties are responsible to proceed with litigation on those counts which are not challenged by a motion under F.R.C.P. 12(b)"). *Cf.* CIT Rule 7(a) ("There shall be a complaint and . . . an answer"); CIT Rule 12(a) ("the United States . . . shall serve an answer to the complaint . . . within 60 days of service"); CIT Rule 12(b) ("Every defense, in law or fact, to a claim for relief in any pleading, . . . shall be asserted in the responsive pleading thereto"). *But see* Wright *et alia*, 5A *Federal Practice & Procedure* § 1346 ("[T]his approach also has the disadvantages of requiring duplicative sets of pleadings in the event that the motion is denied, and of causing confusion over the proper scope of discovery during the motion's pendency. A more considered solution might be to hold that a partial Rule 12(b) motion expands the time for answering the entire pleading, relying on the prospect of Rule 11 sanctions to deter the abusive use of such a motion). *See also Brocksopp Engineering, Inc. v. Bach-Simpson, Ltd.*, 136 F.R.D. 485 (E.D. Wisc. 1991) (partial motion to dismiss extends defendant's time to answer all claims). After considering such authority as could be discerned in this area, the Court concluded that discovery was not an issue in this matter and that any "duplicative" pleadings rather would be the result of the defendant's piecemeal approach to pleading, the first of which was untimely. Therefore, accepting the reasons advanced by Okaya, the Court granted its motion for entry of default on February 3, 2003. *Cf. LaPerla Fashions, Inc. v. United States*, 22 CIT

385 (1998) (noting entry of default); *Syva v. United States*, 12 CIT 199, 681 F. Supp. 885 (1988) (noting entry of default).

On February 24, 2003, the government moved for reconsideration pursuant to CIT Rule 55(c), which allows setting aside an entry of default for "good cause shown." The Rule parallels F.R.C.P. 55(c), which is generally interpreted to require of a defendant seeking to have entry of default set aside to show: (1) good cause for their default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint. *See*, *e.g.*, *Union Pacific Railroad Co. v. Progress Rail Services Corp.*, 256 F.3d 781, 782-83 (8th Cir. 2001) (referencing *Pioneer Investment Services Co. v. Brunswick Associates LP*, 507 U.S. 380, 394-95 (1993) and considering (1) the length and reason for the delay in filing and whether the defendant acted in good faith, (2) the prejudice the plaintiff incurred by the delay, and (3) whether the defendant has a meritorious defense); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir.1991) (considering (1) whether the default was willful, (2) whether setting aside the default would prejudice the adversary, and (3) whether a meritorious defense is presented), *cert. denied*, 503 U.S. 1006 (1992). Federal courts have generally looked for guidance on "good cause" in F.R.C.P. Rule 60(b), which includes "mistake, inadvertence, surprise, or excusable neglect." *See Medunic v Lederer*, 64 F.R.D. 403 (D.C. Pa 1974).

The government essentially reiterated argument presented in its response to Okaya's motion for entry of default that its motion to dismiss had not been untimely. On March 5, 2003, Okaya filed opposition, which contended that the government's "mistake" was not excusable. Okaya further noted, among other things: "[e]ven now, almost three months after the deadline [for answering], and after this Court has issued an entry of default, defendant still refuses to answer the complaint." Pl.'s

Resp. in Opp. to Mot. for Recon. at 2. That was true as to count III, however the Court had not yet ruled on the motion to dismiss. Nonetheless, the Court agreed that the government's "liberal" interpretation of the Court's Rules for responsive pleading had not been reasonable and therefore denied reconsideration on March 27, 2003. The order therefor acceded to Okaya's demand to include language requiring the defendant "to answer all counts of the Complaint forthwith" in order to receive one, complete, responsive pleading from the government.

The government filed its answer April 2, 2003, denying every fact alleged in the complaint and setting out the affirmative defense of lack of jurisdiction over counts I and II and failure to exhaust administrative remedies. Okaya then moved for entry of default judgment or judgment upon the administrative record under CIT Rules 55(b), 55(e), and 56.1. The government responded by renewing its motion to dismiss counts I and II and by requesting judgment upon the agency record.

***Discussion***

I

Entry of default judgment may be appropriate against a party who has failed to plead or otherwise defend against a claim brought by another party. *See Black's Law Dictionary* 417 (6th ed. 1990). On a motion for default judgment, a court should take into account "considerations of social goals, justice and expediency . . . within the domain of the trial judge's discretion[,]" *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970), which may include the amount of money involved, whether material issues of fact or issues of substantial public importance are at issue, whether the default is largely technical, whether the plaintiff has been substantially prejudiced by the delay involved, whether the grounds for default are clearly established or are in doubt, the harshness of the

effect of default judgment, whether default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant, and whether the plaintiff itself engaged in dilatory behavior.  *See generally* Wright *et alia*, 10A *Federal Practice and Procedure* § 2685.

However, the "preferred" resolution of litigation is consideration on the merits.  *See e.g.*, *Brady v. United States*, 211 F.3d 499 (9th Cir. 2000); *Coon v. Grenier*, 867 F.2d 73 (1st Cir. 1989); *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) *Schwab v. Bullock's Inc.*, 508 F.2d 353 (9th Cir. 1974); *Pulliam v. Pulliam*, 478 F.2d 935 (D.C. Cir. 1973); *Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969); *Hutton v. Fisher*, 359 F.2d 913 (3rd Cir. 1966).   Furthermore, CIT Rule 55(e) provides that "[n]o judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court."  As with other Rules, CIT Rule 55(e) parallels F.R.C.P. 55(e), which

> rests on the rationale that the taxpayers at large should not be subjected to the cost of a judgment entered as a penalty against a government official which comes as a windfall to the individual litigant. The private party must first demonstrate that there is some basis on which he is entitled on the merits of his claim to receive judgment. A court should accord respect to this policy beyond the confines of Rule 55(e)'s strict coverage when it can do so without running against a countervailing consideration.

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir 1962), *cert. denied* 371 U.S. 955 (1963).  *See generally* Wright *et alia*, 10A *Federal Practice and Procedure* § 2702.

Apart from Okaya's right to relief, addressed below, on its motion for entry of default judgment Okaya contends that it has been prejudiced by the government's delay of disposition of this matter by an additional four months and five separate briefings requiring time and effort to address and that the government's actions continue to deprive it of monies rightfully owed to it Pl.'s Reply

in Support of Its Mot. for Judgm. or Judgm. Upon the Agency Record at 10. The Court agrees with the proposition that unjust delays in litigation would be prejudicial to a plaintiff. *Cf. Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984) ("being deprived of this substantial sum of money for [such a significant period of time] is undoubtedly a significant burden") (citing *United States v. $23,407.69 in United States Currency*, 715 F.2d 162, 166 (5th Cir. 1983). Moreover, "[t]he fact that a court has allowed a party in default to proceed in the suit and answer the complaint does not automatically put the defaulting party in the position of one who is making a timely response to a complaint." *Bavouset v. Shaw's of San Francisco*, 43 F.R.D. 296, 299 (S.D. Tex. 1967). However, the Court is not persuaded that the government's motion to dismiss counts I and II, filed on its assumption that it was timely, was a mere delaying tactic. Moreover, at the time of Okaya's motion for entry of default, the Court also acceded to Okaya's request to seek leave to move for entry of default judgment since, at the time, the government had not filed an answer to the complaint. At common law, joinder of issue occurs when "the parties to a cause arrive at that stage of it in their pleadings, that one asserts a fact to be so, and the other denies it." *Black's Law Dictionary* 836. In this instance, joinder of issue occurred *after* entry of default as a result of the plaintiff's request for joinder. Moving for entry of default judgment at this stage, although permitted by the Order of March 27, 2003, appears to be a procedural contradiction. On balance, the Court exercises its discretion to address this matter on its own merits.

II

Normally, the Court is asked to consider whether there is ambiguity in the authorizing statute upon which a clear agency determination rests. In this instance, the Court is asked to consider the

reverse. The antidumping statute provides that "[a] determination under this section to revoke an order or finding or terminate a suspended investigation shall apply with respect to unliquidated entries of the subject merchandise which are *entered*, or withdrawn from warehouse, for consumption *on or after* the date determined by the administering authority." 19 U.S.C. § 1675(d)(3) (highlighting added). The meaning of this provision is plain: merchandise which entered prior to the effective date of revocation decided by Commerce, a matter within its discretion, does not receive the benefit of revocation. In this matter, however, it is the meaning of the operative language of the final results that is implicated, if not contested, the allegation being liquidation instructions not in conformity therewith.

Although the parties apparently disagree over the extent of suspended liquidations included within the ambit of Commerce's revocation policy, at least one aspect of the briefing is abundantly clear: except for the instant matter, the effect of the date chosen by Commerce as the effective date of revocation is *prospective* in application.[12] This comes as no surprise, in light of the plain meaning of section 1675(d)(3). The final results underlying the instant matter are therefore defective to the extent that they make revocation "effective August 1, 2001, with respect to all unliquidated entries." They do not use the words "entered on or after," which would have clearly signaled the usual prospective effect of revocation from the effective date.

In the absence of such language, and since the final results further stated, *e.g.*, that Commerce will instruct Customs to "refund any estimated antidumping duties collected for *all* unliquidated entries of certain tin mill products (*i.e.*, certain tin-free steel) meeting the specifications indicated[,]"

---

[12] *See*, *e.g.*, Pl.'s Reply in Support of Its Mot. for Judgm. or Judgm. Upon the Agency Record at 18 (table and footnotes). *See also* footnote 7, *supra*, and cases cited.

67 Fed. Reg. at 44,179 (highlighting added), Okaya argues it was reasonable to conclude that refunds would be issued, as long as the entries were unliquidated as of August 1, 2001. Okaya does not (and cannot) argue that the final results were ambiguous: it argues that their meaning was plain, or at least as it interpreted them. That is, Okaya argues it was reasonable to interpret the final results to mean that Commerce had granted its retroactive revocation request in full and that it applied revocation "to any entries that remained unliquidated *as of* that date[.]" Pl.'s Opp. to Mot. to Dismiss at 3 (highlighting added). However, the Court must conclude that the absence of "entered on or after" in the final results does not result in the "unambiguous" interpretation Okaya advocates. In light of section 1675(d)(3), Okaya's interpretation is inherently contradictory since it renders "effective August 1, 2001" superfluous as well as the significance of any antidumping duties that attached at entry prior to such effective revocation date. Further, it does not logically follow from the fact that the final results omitted "entered on or after" that Commerce granted Okaya's request for retroactive revocation as to all dumping duty deposits regardless of the date of entry. For the argument to have merit, Okaya would have to demonstrate in accordance with section 1675(d)(3) not only that "effective August 1, 2001" was *not* intended as the date of revocation but it must also demonstrate which date *was* intended for revocation, which can only have prospective effect in accordance with section 1675(d)(3). Okaya has not done so. Furthermore, Okaya agrees that Commerce announced an effective date of revocation in the final results, *i.e.* August 1, 2001. Consequently, the argument that the final results literally (and therefore unambiguously) made revocation effective as to "all unliquidated entries" regardless of entry, due to the absence of "entered on or after," is argument for enforcement of a determination that is not in accordance with 19 U.S.C. § 1675(d)(3) and is therefore

unlawful, because that provision is clear as to its "prospective" application. Such a determination would therefore be unenforceable, as would literal liquidation instructions emanating from it.

Accordingly, to give effect to the final results, the Court must construe the defects in operative language in accordance with law to the extent possible. The Court finds that although the final results omit the words "entered on or after," Commerce nonetheless announced August 1, 2001 as the effective date of revocation, and that revocation was to have prospective effect from such date, in accordance with section 1675(d)(3). Also in accordance with that provision, "all unliquidated entries" as used in the final results must be construed as all unliquidated entries that obtain the benefit of revocation, *i.e.*, those that entered on or after such effective date of revocation. The liquidation instructions, based thereon, describe subject merchandise "entered, or withdrawn from a warehouse, for consumption on or after 08/01/2001." Okaya is correct in alleging that they appear facially inconsistent with the final results as issued; however, based upon the foregoing, the Court must find the liquidation instructions in accordance with the effective date of revocation determined in the final results and in accordance with law, since they are in accordance with section 1675(d)(3). They are therefore not legally inconsistent with the final results.

### *Conclusion*

Based upon the foregoing, the Court must conclude that Okaya's proper remedy lay in challenging the final results within 30 days of issuance pursuant to 28 U.S.C. § 1581(c). The Court concludes that it lacks jurisdiction over counts I and II and therefore grants the defendant's motion to dismiss these counts. Since the liquidation instructions are not inconsistent with the final results and are in accordance with law, judgment will enter for the defendant.

_____
R. KENTON MUSGRAVE, JUDGE

Dated: October 3, 2003
        New York, New York